## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

| | |
|---|---|
| | **Civil Action No.** |
| | **COMPLAINT FOR VIOLATIONS OF:** |
| | **1. Title 42 U.S. Code § 1983** |
| | **2. Title 28 U.S. Code § 1331** |
| | **3. Amendments to the U.S. Constitution and redress able pursuant to Bivens v. Six Unknown Narcotics Agents 403 U.S. 388 (1971)."** |
| | **4. TITLE IX OF THE CIVIL RIGHTS,** |
| | **5. 1st 4TH , 5th 6th 7th 8th 9th and 14th** |
| DR. IFEOMA EZEKWO, MD | **6. AMENDMENTS AND CIVIL RIGHTS VIOLATIONS** |
| | **7. ABUSE OF PROCESS** |
| Plaintiff | **8. ABUSE OF POWER UNDER THE COLOR OF LAW** |
| VS. | **9. BLATANT DISCRIMINATION AND** |
| 1. OPMC( OFFICE OF PROFESSIONAL MISCONDUCT) NEW YORK | **10. DENIAL OF RIGHT TO TRIAL OR HEARING** |
| | **11. DENIAL OF DUE PROCESS** |
| 2. NEW YORK STATE DEPT OF HEALTH | **12. VIOLATION OF AMERICANS DISABILITY RIGHTS** |
| 3. JOHN or (JANE) DOES 1-10 | **13. HATE CRIMES AND BIAS AND CORRUPTION** |
| Defendants. | **14. FALSE PROSECUTION** |
| | **15. HATE CRIMES AND BIAS HARRASMENT** |
| | **16. REFUSAL OF ASSISTANCE OF COUNSEL** |
| | **17. INVASION OF PRIVACY** |
| | **18. DEFAMATION OF CHARACTER, LIBEL AND SLANDER.** |
| | **(JURY TRIAL DEMANDED)** |

------------------------------------------------------------- X

STATE OF NEW YORK      )
COUNTY OF BRONX      ) ss

1

## JUDICIAL NOTICE

All officers of the court for  US Federal Court District of New York   are hereby placed on notice under authority of the supremacy and equal protection clauses of the United States Constitution and the common law authorities of Haines v Kerner, 404 U.S. 519, Platsky v. C.I.A. 953 F.2d. 25, and Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) relying on Willy v. Coastal Corp., 503 U.S. 131, 135 (1992), "United States v. International Business Machines Corp., 517 U.S. 843, 856 (1996), quoting Payne v. Tennessee, 501 U.S. 808, 842 (1991) (Souter, J., concurring). Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647, American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001).

In re Haines: Pro se litigants (Plaintiff is a pro se litigant) are held to less stringent pleading standards than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.

In re Platsky: court errs if court dismisses the pro se litigant (Plaintiff is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings.

In re Anastasoff: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a constitutional right to have their claims adjudicated according the rule of precedent.

See Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000). Statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss or for summary judgment, Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

**Despite the above declarations by Plaintiff, she had to endure the attempts by Judges especially Judge Bumb to preclude her from filing federal law suits against her adversaries. Plaintiff filed an appeal in the third circuit against the preclusion order and in May 2022, the Appellate court ruled in Plaintiff's favor that she cannot be precluded in filing federal law suits against her adversaries. This means that Plaintiff can now continue her law suit against OPMC and NYS department of Health. In retaliation, Judge Bumb tried again to refile and amended preclusion order which again is referred to and being handled in the third circuit court of**

2

**appeals and in the interim Plaintiff by the ruling of the appellate court can bring federal law suits against her adversaries. Hence this court is pleaded not to violate Plaintiff and under the ruling allow Plaintiff to file and complete her law suit against OPMC and NYS department of health to give her due process under the law and remove erroneous information OPMC put in her database.**

**On legal advice on the matter and on refocusing on the required and cogent result, Plaintiff's law suit is strictly on the two entities whose decisions has negatively affected her and whose reversal of action will alleviate the suffering caused for even though all those listed in prior law suit were all contributory, they are not decisionary hence the need here to plead the court to compel the current defendants to reverse their wrongful decisions in the matter, allow Plaintiff a trial and grant her justice. Finally, the court's prior mistaken and misleading allegation that Plaintiff did not state a claim did not and cannot stand the level of truth and legal assertions clearly elucidated in Plaintiff legal arguments buttressed with a preponderance of evidence on how and when and how defendants has wronged and harmed Plaintiff with the claims clearly stated with legal backing and argument. Plaintiff was irreparably harmed by the perpetrator OPMC and their cohorts. This case needs to go to trial so that Plaintiff can prove her case which she is willing and able to do.**

I, DR. IFEOMA EZEKWO, MD. Declare that I am of full age and in full knowledge of the facts therein.

1. **JURISDICTIONAL BASIS**

   Plaintiff claim federal jurisdiction pursuant to Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution.

2. Plaintiff brings this suit pursuant to Title 42 U.S. Code § 1983 for violations of certain protections guaranteed to them by the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendments of the federal Constitution, by the defendants acting under color of law in their various capacities as State agents, Federal agents, officers of the law and municipalities in various capacities and in collusion together and severally to others thus affiliated in mischief and common understanding and their secret and sinister

intent to  cause harm to plaintiff  in their  capacities and thus deprive Plaintiff  of  her civil rights that are guaranteed her under the constitution of the United States. **This case is filed correctly as the actors are functioning in diverse capacities for which this platform covers all.**

3.   Plaintiff brings this action against Defendants who are acting as state and Federal Agents, judicial officers, other municipal officers and other associated individuals in concert pursuant to Title 28 U.S. Code § 1331, in claims arising from violations of federal constitutional rights guaranteed in the amendments to the U.S. Constitution and redress able pursuant to Bivens v. Six Unknown Narcotics Agents 403 U.S. 388 (1971)."

4.   These violations by Defendants  was intentional, reckless and in total and callous disregard for the plaintiff's rights in the matters thereby putting Plaintiff's life and profession and career and property  in mortal danger and totally stripping her of  her civil rights in the process.

**PARTIES:**

5.   Plaintiffs Dr. Ifeoma Ezekwo, MD is a natural person, a physician licensed in the state of New York for the practice of Ophthalmology and Internal Medicine with offices at Grand Concourse, Bronx, New York.

6.   Defendants OPMC is ( Office of Professional Medical Misconduct)  together  with St Barnabas hospital who filed a false complaint and perjured themselves and OPMC did not adjudicate but chose to leave the false information in Plaintiff's record.  This meant that those who have need to look up information on Plaintiff like DEA or other health related entities are fed this wrongful information against Plaintiff and every attempt made by Plaintiff to actually state that the information is wrong and Plaintiff did nothing wrong is seen as irrelevant and they want Plaintiff to be forced to sign that the false information in the file about her is true when in actuality it is false. Hence getting back to basics and through this litigation compelling OPMC to first remove the error will help Plaintiff to then correct the induced errors with DEA and other actors. Under OPMC are other defendants are  officers of the New York   judiciary and health department and its   law enforcements who are united by their effort to cause severe  and professional  harm to plaintiff and harass Plaintiff  for over several years nonstop while at the same time

conniving to deny her any and all redress under the law including brazenly denying her the ability for due process, denying her a due process hearing, denying her the right to be represented by her counsel demanding hearing to enable her case, denying her the right to litigate on recovery to sue and the right to complain in the most brazen and methodical violation of civil rights ever seen in USA.

## STATEMENT OF CASE

7. Under the federal civil rights law Title 42 U.S. Code § 1983 which reads as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
This law is irrelevant of the fact that the offending parties defendants as in this case happens to be a Judges, law enforcement officers, city workers and attorneys aiding and abetting them when they broke the law.

8. Plaintiff hereby alleges and show that the defendants together and severally acted unconstitutionally and outside of their jurisdiction. Defendants engaged in an egregious discrimination against Plaintiff in OPMC hearing, as a minority in confrontation with government authorities of State of New York and treated her suspiciously, refused to postpone her hearing when she was seriously ill and thus could not attend and decided without giving her due process, then denied her trial on her case when she recovered, co-opted all others against her, refused her attorney's continuous demands to schedule a hearing so Plaintiff can testify on her own behalf and clear her name and against them and in the ultimate insult to injury dismissed every attempt plaintiff or her counsel made to effect a hearing a futile effort by their ultimate use of total silence like Plaintiff does not exist and yet kept the false information about the incident in public record refusing to remove it and refusing Plaintiff due process in the most outrageous form of civil right violation.

9. Despite the Plaintiff's attorney attempts to bring sanity to this most insane situation, NYS OPMC refused to bulge  knowing full well that it is against civil rights to keep a disputed information in anybody's public files without due process.  This has been part of a harassment campaign against Plaintiff and her family since she started her career.

10. As shown below in the copy of the letter that Plaintiff's attorney sent to Roy Nemesis of NYS department of health, there is detailed information of what happened here from a medical legal mind and solutions suggested which was ignored by the OPMC and NYS department of health.

11.                                                                                    July 25, 2017
Roy Nemerson, Esq.
New York State Department of Health
90 Church Street – 4th Floor
New York, New York

Re:  **In the Matter of Ifeoma Ezekwo, M.D.**

Dear Mr. Nemerson:
    The above entitled mater has been formally addressed on two separate occasions by the New York State Department of Health.  On December 27, 2013 Determination and Order BPMC #13-429 was issued resulting in a two-year stayed suspension of license.  Thereafter, on April 2, 2014, the Administrative Review Board ("ARB") affirmed the decision of the Hearing Committee.
    At the time of these two regulatory determinations Dr. Ezekwo was suffering from the recent aftermath of a stroke, **and major spinal surgery** which prevented her from participating directly in these proceedings.  Despite several attempts to adjourn these proceedings, the Department insisted on going forward despite the fact that Dr. Ezekwo was out sick and thus was not actively practicing and was unable at the time to operate her solo Ophthalmology practice, and/or participate meaningfully in the Hearing process.
    The focus of the hearing involved a number of questions about credentialing issues. In fact it was obvious from the facts that St. Barnabas without legal justification falsely accused Dr. Ezekwo in all the complaints they presented to OPMC about her even though her past clinical experience was clearly and truthfully answered in the application form and the supporting documents Dr. Ezekwo submitted with her admitting privileges application.  At the time of these events, it should be noted that Dr. Ezekwo was spoken to in an incourteous manner by the Director of Medical Staff privileges at St. Barnabas who abruptly told her that she could not operate on approximately ten patients whom she had already booked in the hospital after the Ophthalmology Director at St. Barnabas had already granted Dr. Ezekwo temporary privileges.  This conversation with the Director of Medical Staff privileges occurred while Dr. Ezekwo was waiting for her previously scheduled credentialing meeting.

Additionally, the Director of Medical Staff Affairs demonstrated bias to Dr. Ezekwo, and told her that she read on the internet that Dr. Ezekwo had sued Montefiore before and that St. Barnabas Hospital was then presently seeking affiliation with Montefiore Hospital so therefore, for political reasons, she would not allow Dr. Ezekwo to have privileges at St. Barnabas and that she would do everything in her power to stop Dr. Ezekwo from getting admitting privileges at St. Barnabas and "will destroy Dr. Ezekwo" if she tried.  This is clearly the language of bias and inappropriate credentialing practices.  Dr. Ezekwo therefore proceeded with her application after making arrangements for her patients to be cared for through an Ambulatory Surgery Center ("ASC") in the Bronx.

When Dr. Ezekwo was completing the application, the instruction said specifically to disclose events in the past ten years.  This was her clear understanding at the time she initially completed her application to St. Barnabas.  Further, based on prior applications that Dr. Ezekwo has done in the past in similar situations, she understood the application for credentials to St. Barnabas to only apply to events which had occurred within the last ten years.  After Dr. Ezekwo sent in the completed application, the Medical Staff Office secretary who was reviewing the application for completion before submitting it to the Credentials Committee for review called Dr. Ezekwo about the incomplete entry knowing full well that Dr. Ezekwo had already discussed openly the issue with Montefiore with St. Barnabas even before the application went in.  Dr. Ezekwo answered her immediately telling her that the instructions said ten years, and the issue with Montefiore was longer than that, fifteen years to be exact. Dr. Ezekwo then followed this with a fax documenting the same sentiment and explanation.  The Medical Staff Office, upon receiving Dr. Ezekwo's Fax confirmed that the file was complete, that they were satisfied with her answers, and all her documents were complete and truthful and accurate.  She was then scheduled her for interview with the Credentialing Staff.  When Dr. Ezekwo arrived at St. Barnabas hospital for her admitting privileges interview, and while she was waiting for her turn in the lobby to be called, Dr. Ezekwo was again confronted by this same lady, the Director of the Medical Staff Office. She then rudely confronted Dr. Ezekwo by asking her what she was doing there. Dr. Ezekwo politely answered that she was there for her interview which had been previously scheduled. She told Dr. Ezekwo that she was wasting her time because it would be over that Director of Medical Staff's "dead body" that Dr. Ezekwo would ever get admitting privileges at St. Barnabas. This was a second inappropriate comment by the Director of the Medical Staff Office.  Dr. Ezekwo did the interview anyway since she was at the hospital already and the Credentialing Team again went over all her qualifications and trainings with her and all the years of practice. Dr. Ezekwo felt strongly that the Director of Medical Staff would not allow privileges to be granted her as she had clearly told her so.

Dr. Ezekwo did not attend the Due Process Hearing on Medical Staff privileges at St. Barnabas viewing it as exercise in futility and at that time also had to care for her own health which was of utmost importance to her.  The OPMC Hearing Committee did find that Dr. Ezekwo was aware of a Montefiore denial of privileges as of October 12, 1995, but this was approximately fifteen (15) years prior to her application for privileges as a staff physician at St. Barnabas.  Consistent with her (emphasis added) understanding of the St. Barnabas ten year requirements, she has enumerated above what actually happened to her throughout that application process which she was not present to explain during the hearings due to illness. Under no circumstances did she meet the criteria of

7

Matter of Breslin vs. Commissioner of Education, 116 A.D.2d 357, 501 N.Y.S.2d 923 (3rd Dept. 1986) whereby she made a knowing and deliberate misrepresentation.  The Hearing Committee voted 2 to 1 against her on this isolated charge, and had she been physically able to participate, she undoubtedly would have convinced all three of the voting members of the Hearing Committee of the correctness of her position.

Dr. Ezekwo seeks a complete reconsideration and review of this prior determination which was based on false charges brought by St. Barnabas and for this false case to be dismissed in its entirety.  By forcing this case to proceed at a time when health considerations precluded her participation additionally raises questions of whether or not her federal rights were violated under color of state law.  I would welcome the opportunity to sit down and discuss this matter with you, or with whomever in the Department of Health you deem appropriate.  If requested, I would be more than willing to bring in Dr. Ezekwo to better explain all of the surrounding issues that were the subject of the Hearing, and subsequent appeal to the Administrative Review Board ("ARB").

Essentially, Dr. Ezekwo seeks a finding that the present information on the New York State Department of Health website be withdrawn and taken down immediately as it has been adverse to her.  I would much prefer to design an immediate approach whereby intervention by the courts can be obviated as it is very obvious that Dr. Ezekwo was harmed here by these false accusations and the persistence of the false information against her on the website as well as all that she has been put through dealing with the OPMC Staff and their subsequent sharing of this inaccurate Administration Hearing finding with the New Jersey Medical Board.  Her license in New Jersey has therefore been jeopardized and she must have this issue remedied here in New York first, so she can then resolve all New Jersey issues and any other states she might seek to affiliate with.  I believe that if Dr. Ezekwo  is permitted to explain these events in detail, a better and more complete understanding of events could be had.  I look forward to discussing this matter with you further in the very immediate future as an unfair and unjust burden has been placed on Dr.  Ezekwo by an Administration Hearing finding that does not accurately correlate with the facts.  Additionally, consideration should be had towards an inquiry to review why St. Barnabas brought charges against Dr. Ezekwo when they knew the underlying material facts did not justify denying the application for privileges.

I would appreciate a prompt and immediate response, and would welcome the opportunity to discuss this matter further.

Respectfully submitted,

Kevin D. Porter, Esq.

KDP/lo
Cc:  Dr. Ifeoma Ezekwo

8

13. Thus having denied Plaintiff this right to due process and having refused to remove the false information from Plaintiff's public files, they went further by dissipating the same false information to others without cause and due process putting Plaintiff in professional and personal life in mortal danger with known and unknown adversaries who now have this false fodder to feed off and thus blocking Plaintiff from all professional opportunities with this lurking in her record under the color of law for the several years thereby aiding and abating those that fabricated those lies against Plaintiff and emboldening them to continue the "reign" of evil against Plaintiff who was quietly following her profession and these situations thus gave rise to denial of equal protection under the Fourteenth Amendment of the United States constitution.

14. In addition Defendants having refused to remove the false information from the records and having refused to give Plaintiff due process but instead gave this false information to DEA when they inquired during Plaintiff's renewal of her DEA number during the start of the COVID 19 pandemic in 2020. Despite the fact the Plaintiff's counsel had advised and given answer to the twisted situation which the Plaintiff gave to DEA during the controversy, in a move that surprised and baffled the Plaintiff, the DEA now wants to force Plaintiff to sign an MOA that this falsehood in Plaintiff's record is the truth as the only condition they can assign her a DEA number. So while the Plaintiff is saying the atrocities that OPMC propagated against her actually happened, Plaintiff now feels utterly and violently violated and victimized all over again. It has now become more important than ever that OPMC and their co defendants must be compelled by law to either immediately remove the false information in Plaintiff's record and be sued under the Federal law to stand trial and provide evidence as well the Plaintiff be given the opportunity to provide her evidence and defend herself and thus force OPMC to remove the false information and compensate her for the same. For while DEA had wanted a hearing to conclude the matter with Plaintiff, it was not the rightful solution. Plaintiff on advice must first and foremost, litigate OPMC to remove the erroneous information they have on Plaintiff's record and allow her to stand trial in her own defense now that she can do so. Hence she declined a hearing, stopped the application with DEA and proceeded to deal with this matter in court first so that the error that OPMC made can be corrected and thus, she can then forward those to DEA and others to correct the error and cease the

argument. These concerted efforts by OPMC and the other defendants to disfranchise and demonize and professionally harm Plaintiff and put Plaintiff's professional live in perpetual danger clearly shows these malevolent Defendants have injured Plaintiff enormously and violated her civil rights and it must be noted that there is no precedent in law where the acting out of personal or group arbitrary and capricious malicious acts and group hate crimes are covered by assumed immunity.

15. **The part background for all these harassments in this case is as follows: There is the most horrific and graphic details ever watched on the video of the most gruesome, inhumane, premeditated attempted murder and un provoked gross and brutal physical assault to Plaintiff and her son; Dr. Ezekwo's son, a physician was attacked pre-meditatively by three Englewood police officers namely Christopher Quirk, Thornton White, and Michael Christiansen that left him with brain concussion, head lacerations, broken nose, broken ribs, dislocated wrists and multiple other body injuries as well pepper spray directly into his eyes and left alone bleeding inside his hospital room 23 in Englewood hospital.**

16. **Plus the stroke suffered by the Plaintiff Dr. Ezekwo who they threw on the floor and falsely accused and under this brutality and assault Plaintiff suffered a stroke and was admitted and treated in the same Englewood hospital and falsely detained and released.**

17. **And then the false reports and perjury and 19 counts of other criminal actions by Officer Christopher Quirk and his accomplices and the subsequent massive cover up by the city of Englewood and the persistent harassment of Drs Ezekwos by all ranks and file of Englewood city officials and law enforcement.**

18. **The Englewood hospital staff then lied with the Englewood Law enforcement in medical records and refused to release the video that captured the incident despite various request by Plaintiff until threat to report the matter to state hospital oversight forced them to release the video which even though they redacted and**

10

edited heavily still showed the horrific attack these named officer unleashed attempting to murder in cold blood.

19. On top of all the above,  Englewood police  then   published a false story about the plaintiff's son with full name and picture in the Bergen record newspaper and online and have refused to remove the false story and apologize to this day.

20.  And finally to congratulate  officer Mr. Christopher  Quirk on his crime spree, city of Englewood made him a detective, and armed him with all the tools of government and detective work so he can continue to harass, survey, monitor and intimidate his victims, the Plaintiff  to this day through various criminalities  such as , attempted murder, attempted rape; attempted pedophilia,  tree and shrub poisoning, harassment and premeditated  fake emergency orchestrated  in order to murder Plaintiff  in her  home and then lie and cover up.

21. These Englewood law enforcement and city employees have continuously harassed and performed all these activities for past years nonstop and they are brazen and feel entitled to continue their various criminal activities.

22. Judge Liliana DeAvila Silebi, who was the Bergen county Superior Court Judge assigned to the case, was extremely corrupt and prejudiced. Even though there was clear evidence that the Police officers all lied and fabricated charges and there was a video, Judge Silebi criminally  refused to look at the evidence or ask for the video to be shown to her and went on to keep Bail at $400,000.00 and thus intentionally endangering the life of an innocent citizen as well as aiding and abetting  deep criminal activity and harassment including attempted murder and assault against plaintiff and family for many years, the threat of which Plaintiff and family still live under today. Judge Silebi even refused to end the false probation even when video evidence had emerged despite her refusal to look at showing that Plaintiff and her son had been violently assaulted, falsely imprisoned and perjured against by officers Christopher Quirk, Thornton White and Michael Christiansen. Judge Silebi also took no remedy to prosecute these police officers or the City of Englewood, even letting them promote Police Officer Christopher Quirk to detective equipping him with all the tools of government with which continued to track, harass and carry out

11

a terrorist campaign against the Plaintiff and her family. Plaintiff complained about Judge Silebi and nothing was done. So this allowed Judge Silebi to assume that she was invincible and thus continued other crimes and misconduct that finally got her debarred and disgracefully removed from the bench never to be a Judge again. Had Corrupt Judge Silebi has been held accountable and corrected for the atrocity she committed against Plaintiff, she would have rehabilitated but now she publicly disgraced forever and a shame to all judges. It was partly because of Plaintiff's complaints against Judge Silebi that she left Hackensack court and went to Passaic County where she continued her atrocities until she was debarred and removed from the Bench. Details of her removal from the bench are in the appendix:

23. It was during the acute phase of this incident that OPMC then ratcheted up their attack on Plaintiff and insisting that a hearing on the false report they got from St. Barnabas hospital must be held and refusing to postpone the hearing so Plaintiff who have just suffered a stroke during the above described episode and was being cared for by family and friends and could not at that time be in any position to testify.

24. Despite the plaintiff's attorney at that time letting OPMC know Plaintiff was ill, OPMC refused to adjourn the hearing and then conducted the hearing without the Plaintiff and ruled against the Plaintiff.

25. Hence forward, every attempt made by Plaintiff and her counsel to obtain a hearing or reversal of the adverse and false information OPMC ultimately put in Plaintiff's public record was stonewalled and denied.

26. In fact despite the fact that Plaintiff complained everywhere, to Commissioner of Health, NYS Inspector General, the NYS Counsel Roy Nemerson and even Governor Cuomo, Plaintiff was just treated with ignominy.

27. While the OPMC and NYS department of Health from the facts of the case as revealed by Plaintiff  knew that Plaintiff was innocent, they still did not schedule a hearing or remove the false report

28. In fact, Plaintiff now has every reason to believe that the partial reason for the OPMC adamancy in keeping the false record had to do with the case that Plaintiff has with the city of Englewood law enforcement in order to aid them by creating a record for her and to humiliate and track her which OPMC despite the Plaintiff's innocence.

29. During this same time, Dara Govan of DOJ decided to take on the case and after speaking with Plaintiff and her counsel on the matter, then as subsequent events will weirdly corroborate, there was more harassment of Plaintiff from OPMC for cases where Plaintiff cared for patient five years earlier and according to patient she did not know why OPMC was harassing Plaintiff because Plaintiff did not operate on her and did nothing wrong by her.

30. Not only that but through Dara Govan and OPMC the NJ medical board where Plaintiff had an inactive medical license as Plaintiff was practicing only in NYS before Plaintiff got ill started harassing Plaintiff even though Plaintiff had never practiced in New Jersey and made her license inactive when she got ill. In fact New Jersey medical board moves were so bizarre and Plaintiff's attorney could not why they are harassing Plaintiff and then refused for Plaintiff to activate her license so there is "cause to deal" and demanding hearings while OPMC has still not removed the false information they have on file which by common sense has to be resolved first.

31. Bill Fidell was the OPMC staff who despite being told and shown the evidence that Plaintiff was innocent continued to harass Plaintiff and prosecute on false premise and threatening Plaintiff with notices that lacked due process. The court here asking plaintiff to be brief.
Paula Breen in a similar manner perpetuated the falsehood without due process as shown in the state and OPMC documents in the matter all to be shown at trial. The court hereby asking the Plaintiff to be brief

32. So OPMC without giving Plaintiff notice of a hearing in the proceeding, want to take away Plaintiff's reputation and employability and keep insulting Plaintiff with

13

**the false information, while they are still refusing Plaintiff the hearing to prove Plaintiff's innocence.  This is abuse of power, abuse of process and violation of Plaintiff's civil rights under the color of law and without due process, violating the First, Fourth, Fifth Sixth, Seventh and Eight Amendments as well as the Fourteenth Amendment violations against the Plaintiff.**

33. Defendants by refusing Plaintiff representation of counsel by refusing Plaintiff's attorney's demand for a hearing on behalf of his client the Defendant OPMC  is in total violation of the Sixth amendment of Plaintiff's civil right which grants the Plaintiff the right to be properly represented by counsel and the Defendants acknowledgement of that right. Defendants here denied Plaintiff the effective use of her counsel and violated the sixth amendment.

34. Defendants holding a hearing in Plaintiff's absence when she was disabled and unable to attend is and then refusing to give her a hearing thereafter is in violation of the American Disabilities Acts.

35.  The  amendments of the Bill of Rights violations that the defendants  committed here and described by Plaintiff   give rise to causes of action taken by Plaintiff  here under Title 42 U.S.C. § 1983 and arguably against the Judges of  OPMC and OPMC  in Bivens actions. Also sections of 1983 claim for abuse of process and malicious abuse of process.

36.  Plaintiff  have given a clear and concise description of what happened to her  under the tyrannical reckless and corrupt and biased dealings of Defendants, Judges during the hearing without Plaintiff being present, and how they the   Defendants together and severally have violated Plaintiff  multiple civil rights and constitutional amendments on multiple occasions and Plaintiff  is thus seeking redress.

**PRAYER FOR RELIEF:**

37.  Wherefore plaintiff prays this Court to issue equitable relief as follows and incorporates all prior related complaints and notices and evidence elaborately documented including the facts enumerated in this complaint and plead as follows:

38. **OPMC: Issue injunctive relief commanding  OPMC Defendants  to  immediately put Plaintiff' cases on the trial calendar to adequately address the depth and breadth of the atrocities Plaintiff endured under OPMC  and its  Enforcement officers and Department of health workers   acting narcissistically has totally put Plaintiff's  professional life in danger and damaged her reputation and opportunities and it is OPMC and their allied  Defendants  and waging  secret war against the Plaintiff   in collusion and have  methodically decided to frustrate Plaintiffs  attempt at justice at every corner while still keeping the false information in her professional record. Case must have a hearing and truth fully revealed and the false information that OPMC has on Plaintiff's record be immediately removed.**

39.  **So Defendant OPMC just wanted to close the case and cover up corruptly all the atrocities that happened to Plaintiff without bringing the perpetrators to justice and denying Plaintiff trial brazenly and dismissing the case without due process. The court must now compel OPMC to bring this case to a hearing so Plaintiff can clear her name and those who falsely accused her punished by law and also pay Plaintiff compensation in the amount of ONE BILLION DOLLARS plus other amount determined at trial**

40. **OPMC and the other Defendants should not be allowed to fix Plaintiff's case and corruptly deny her justice and thus the court must compel OPMC to hold a proper hearing in the matter.**

41.  **Defendants must be brought to justice and Plaintiff given the justice she deserves under the law and a hearing must be mandated on the case.**

42.  **St. Barnabas Hospital brought this false claim and perjured themselves and were then left for years without any repercussion but instead OPMC has continued to harass the Plaintiff nonstop and have refused to remove the false information from the Plaintiff's record. St. Barnabas must be held accountable and pay claims as they violated the law and acted maliciously against Plaintiff.  St. Barnabas must be compelled by the court to retract their false statements publicly and also pay**

**Plaintiff compensation for harm done to her by their actions in the amount of ONE BILLION DOLLARS.**

43. **So the OPMC Defendant is giving the green light to these perpetrators like St. Barnabas who lied and brought false accusations which has been proven to be false that it is okay to frame and lie against a licensed Physician in NYS and get away with it. Defendants cannot throw out any case the Plaintiff bring and block the Plaintiff and deny her civil rights. OPMC must be held accountable and punished by law as they are required by law to grant Plaintiff due process.**

44. By Defendants' collective actions and deliberate violation of Plaintiff's civil rights and putting Plaintiff's standing as a physician in jeopardy because of false record data, Defendants broke the law and were violating Plaintiff's civil rights.

45. For those New York State Department of Health and their enforcement and state workers involved be held accountable under the law for menacing, harassing and intimidating and making Plaintiffs life a living hell nonstop. **Plaintiff must be allowed to attend a hearing and defend herself now that she is well to do so.**

46. For the OPMC, their attorneys and all the Defendants that watched in glee and did nothing but instead put Plaintiff's life and reputation in more danger by brazenly siding corruptly with the law enforcement and St. Barnabas and scampering Plaintiffs' case and denying them trial and refusing to bring the perpetrators to justice be brought to justice themselves. **OPMC must be compelled by the court to hear this case now that Plaintiff is well to testify and must be made to remove the false information they left in Plaintiff's records**

47. Issue declaratory relief as this Court deems appropriate just.

48. Issue other relief as this Court deems appropriate and just.

49. Award plaintiff her costs of litigation and Claim against the Defendants in the amount of at least **one billion dollars and additional amount determined at trial**. Plaintiff reserves the right to upwardly adjust this claim as more facts and issues are revealed during the litigation process and discoveries.

16

50.  Punitive damages as Defendants acted maliciously and wantonly. As Defendants committed violations recklessly and callously in total disregard for the Plaintiff's rights.

51. Defendants were malicious in that they harbored ill will and spite towards Plaintiff as they consciously desired to violate federal civil rights of the Plaintiff which they are aware of.

**52.  Defendants OPMC consciously desired to injure Plaintiff in a manner that they know to be unlawful and brazenly violated Plaintiff's right as if there is nothing Plaintiffs can do about it because of their position under the law. Not so. Defendant cannot violate Plaintiffs rights under the law. OPMC defendant must be compelled by the law to remove the false information they have on plaintiff's public records, issue apology and pay Plaintiff compensation for harm done**

53. Defendants OPMC scheduling a hearing that requires Plaintiff to be present and defend herself when the Plaintiff was physically ill and incapacitated in such a way that made it impossible to attend and present her case and defend her violated the American's disability act. And also misappropriated Plaintiff's counsel in a way that is denying her the use of counsel by forcing Plaintiff's counsel to proceed without sick Plaintiff being present. **Defendants must now be compelled by the court via this complaint to schedule a hearing and allow the Plaintiff to present her case and clear her name and also pay her damages in the amount of ONE BILLION DOLLARS AND OTHER ADDITIONAL AMOUNT DECLARED AT TRIAL.**

54.  **The harm to Plaintiff was a foreseeable and fairly direct result of OPMC Defendants' collective conduct.**

55.  The Defendants OPMC acted with conscious disregard of a great risk of serious harm to Plaintiff which is deliberate indifference and Defendants refused to address the risk.

56. **The Defendants OPMC et al were all involved in Plaintiff's cases that distinguished the Plaintiff from the public at large and violated Plaintiffs rights as claimed in the suit**

17

57.  **OPMC Defendants' actions made Plaintiff more vulnerable to physical, professional  harm and financial loss and loss of her reputation as a physician and Plaintiff is seeking compensation in the amount already stated above and other punitive damages as the court deems fit.**

58. **Legal argument, case laws and list of authorities,  injuries and claims and damages are  included below  for further buttressing of Plaintiff's argument and showing accurately how Plaintiff has been irreparably harmed by the Defendants.**

 Plaintiff hereby requests Jury trial.

 Respectfully submitted;

 "/s/*IfeomaEzekwo"*
 Dr. Ifeoma Ezekwo, MD
400 Tenafly Road, # 1002, Tenafly NJ 07670
(201) 674 9548    avitacares@yahoo.com.
**Encl: Appendix Addendum as in complaint, legal arguments are below.**

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all causes of action and claims to which they have a right to a jury trial.

Dated August 29, 2022                              Respectfully submitted,
                                         "/s/ *IfeomaEzekwo*"
                                         BY: IFEOMA EZEKWO
                                 400 Tenafly Road #1002, Tenafly, NJ 07670
                                 (201) 674 9548     avitacares@yahoo.com

## PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1)the complaint is not being presented for an improper purpose ( such as to harass, cause unnecessary delay, or needlessly increase cost of litigation); (2) the claims are supported by existing law or by a non  frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule Of Civil Procedure11. I agree to notify the clerk's office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's office may result in the dismissal of my case.

Dated August 29, 2022                              Respectfully submitted,
                                         "/s/*IfeomaEzekwo*"
                                         BY: IFEOMA EZEKWO
                                  400 Tenafly Road #1002, Tenafly, NJ 07670
                                 (201) 674 9548 avitacares@yahoo.com

19

## Legal Argument and Case Law

59. The actions of the OPMC fall under the banner of unjust cruel and unusual punishment that is a violation of the 8th Amendment.  The OPMC also violated the Disability Act and prosecuted the Plaintiff when she was not able to defend herself in a hearing.  The OPMC's actions are part of a RICO conspiracy.  The OPMC also refused to change and correct false information in the Plaintiff's record.  The disturbing part of this case that must be addressed by this court is that a group of criminals motivated by hate saw it fit to conspire with each other in a RICO conspiracy and take away the rights of an innocent citizen by corruptly manipulating the government and its instruments.  This goes back to the Plaintiff being assaulted with her son and wrongfully prosecuted out of hate by the City of Englewood.  This is a dangerous development that must be immediately curtailed and criminal elements must be removed from the government so that it can function smoothly.  Plaintiff knows this as her husband spent a long career as a federal government officer.  Plaintiff herself has also worked for government at earlier points of her career.  The OPMC is in violation of 42 U.S. Code § 1983, 42 U.S. Code § 1985 and 42 U.S. Code § 1986.

60. Violation of 1st Amendment Rights, Retaliation, Capricious Acts and Violation of Constitutional Rights

61. Hines v. Gomez

62. "Pratt then concluded that "it would be illegal for [prison] officials to transfer and double-cell Pratt solely in retaliation for his exercise of protected First Amendment rights." Id. at 807."

63. "Hines has alleged Pearson's false charge infringed his First Amendment right to file prison grievances. The allegation here falls squarely within Sandin's eleventh footnote and Pratt's reasoning; the injury asserted is the retaliatory accusation's chilling effect on Hines' First Amendment rights, not the additional confinement or the deprivation of the television. We hold that Hines' failure to demonstrate a more substantial injury does not nullify his retaliation claim. Cf. Perry v. Sindermann, 408 U.S. 593, 597-98, 92 S.Ct. 2694, 2697-98, 33 L.Ed.2d 570 (1972) (holding that although teacher had no entitlement to employment contract renewal, the college administration's nonrenewal based on the teacher's public criticism of the college is actionable as a violation of the teacher's free speech rights)."

64. Here the OPMC also worked with Dara Govan and the City of Englewood in retaliation against the Plaintiff Dr. I. Ezekwo, which also falls under a RICO conspiracy as well as being a retaliation action for due to a case the Plaintiff had against the City of Englewood.  This has violated the Plaintiff Dr. I. Ezekwo right to free speech under the 1st Amendment.

65. Barnett v. Centoni

66. "Summary judgment is appropriate if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a nonmoving party bears the burden of proof at trial, he must establish each element of his claim with "`significant probative evidence tending to support the complaint.'" Smolen, 921 F.2d at 963 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987))."

67. Thus the Plaintiff Dr. I.Ezekwo's case can only be resolved at trial with all the evidence gathered and it cannot be properly arbitrated by the OPMC.

68. "Further, under the consent decree entered in Thompson v. Enomoto, No. C-79-1630-SAW (N.D.Cal. Oct. 23, 1980), administrative classification decisions are "in the sound discretion of institutional staff, such discretion to be exercised in a non-arbitrary and non-capricious manner.""

69. The actions of the OPMC against the Plaintiff Dr. I. Ezekwo were certainly of a capricious and arbitrary nature, thus they are subject to liability

70. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985)."

71. The actions of the OPMC were retaliatory for the Plaintiff Dr. I. Ezekwo exercising her constitutional rights and served no legitimate interest.  The actions of the OPMC were criminal and violent.

72. "In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989). A complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Buckey v. Los Angeles, 957 F.2d 652, 654 (9th Cir.1992)."

73. All of the Plaintiff Dr. I. Ezekwo's claims are true material facts and thus the OPMC must cease from all its criminal activity and compensate the Plaintiff.

74. <u>False Information Maliciously Put in Record, Prosecution without Probable Cause, Violation of 4th Amendment, Monell Claim.</u>

75. <u>Galbraith v. County of Santa Clara</u>

76. "We therefore turn to the amended complaint to determine whether its allegations are adequate to state a claim in the absence of any heightened pleading standard. In dismissing the amended complaint, the district court relied on our authority holding that government investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit. See Branch I, 937 F.2d at 1387-88; see also Butler v. Elle, 281 F.3d 1014, 1024-25 (9th Cir.2002); Liston v. County of Riverside, 120 F.3d 965, 972-975 (9th Cir.1997); Hervey v. Estes, 65 F.3d 784, 790 (9th Cir.1995). Under this authority, a § 1983 plaintiff must show that the investigator "made deliberately false statements or recklessly disregarded the truth in the affidavit" and that the falsifications were "material" to the finding of probable cause. Hervey, 65 F.3d at 790 (9th Cir.1995)."

77. The OPMC put clear lies and false information in the record of the Plaintiff Dr. I. Ezekwo as part of a larger conspiracy to take away her rights in retaliation for a lawsuit she had against the City of Englewood and a number of its police officers who attacked her and her son.  Thus the OPMC is liable for its criminal actions.

78. "Neither side has challenged the district court's application of these warrant affidavit cases to the present facts, and we agree, without deciding any issue of immunity, that a coroner's reckless or intentional falsification of an autopsy report that plays a material

21

role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment. See Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir.1998) (analyzing claims of false arrest and malicious prosecution under 42 U.S.C. § 1983 and the Fourth Amendment).”

79. Thus this case also demonstrates that the OPMC's falsified report makes them liable for a USC 1983 and Fourth Amendment violation claim by the Plaintiff Dr. I. Ezekwo

80. “Galbraith claims that Dr. Ozoa recklessly disregarded the truth by asserting in his autopsy report that Josephine was strangled by an assailant while ignoring abundant evidence that pointed to suicide. The amended complaint also describes deficiencies in the autopsy itself tending to indicate that Dr. Ozoa never did the work he claimed he had done to support his conclusion that Josephine's death was caused by an assailant. Finally, the amended complaint alleges that Dr. Ozoa deliberately lied about the autopsy in the autopsy report, in his communications with other investigators, and on the witness stand at the preliminary hearing in order to cover up his incompetence, and that these lies proximately caused Galbraith's arrest and prosecution for murder. The amended complaint therefore adequately alleges a Fourth Amendment violation.”

81. “Galbraith's allegation that Dr. Ozoa's misconduct conformed to County policy also suffices to state a Monell claim against the County.”In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss `even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988) (quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir.1986)).”

82. The Plaintiff Dr. I. Ezekwo's case thus also rises to a Monell claim, as the actions of the OPMC and its associated agents was in conformity with its policies.

83. <u>Fabrication of False Evidence, Violations of Due Process Rights, Defamation and Incitement of Crimes</u>

84. <u>Buckley v. Fitzsimmons</u>

85. “The theory of petitioner's case is that in order to obtain an indictment in a case that had engendered "extensive publicity" and "intense emotions in the community," the prosecutors fabricated false evidence, and that in order to gain votes, Fitzsimmons made false statements about petitioner in a press conference announcing his arrest and indictment 12 days before the primary election. Petitioner claims that respondents' misconduct created a "highly prejudicial and inflamed atmosphere" that seriously impaired the fairness of the judicial proceedings against an innocent man and caused him to suffer a serious loss of freedom, mental anguish, and humiliation.”

86. The entirety of the harassment of the Plaintiff Dr. I. Ezekwo amounts to a show trial that has been created for corrupt political reasons going back to the first assault by City of Englewood police officers who violently assaulted the Plaintiff and her son, and committed perjury, then released false statements to the media lying that they(the Englewood police) were assaulted, the OPMC has continued with this line of behavior as part of RICO conspiracy attempting to create a false image of the Plaintiff Dr. I. Ezekwo to the public so as to continue the criminal agenda of the OPMC, the City of Englewood and their allies.

87. “With respect to the claim based on the alleged fabrication of evidence, the District Court framed the question as whether the effort "to obtain definitive boot evidence linking

[petitioner to the crime] was in the nature of acquisition of evidence or in the nature of evaluation of evidence for the purpose of initiating the criminal process." Id., at 45. The Court concluded that it "appears" that it was more evaluative than acquisitive."

88. "Judge Fairchild dissented in part. He agreed with the District Court that Fitzsimmons was entitled only to qualified immunity for his press statements. He noted that the majority had failed to examine the particular function that Fitzsimmons was performing, and concluded that conducting a press conference was not among "the functions that entitle judges and prosecutors in the judicial branch to absolute immunity." Id., at 1246 (opinion dissenting in part and concurring in part). Responding directly to the majority's reasoning, he wrote:"

89. ""It is true that procedures afforded in our system of justice give a defendant a good chance to avoid such results of prejudicial publicity as excessive bail, difficulty or inability of selecting an impartial jury, and the like. These procedures reduce the cost of impropriety by a prosecutor, but I do not find that the courts have recognized their availability as a sufficient reason for conferring immunity." Ibid."

90. Throughout the Plaintiff Dr. I. Ezekwo's case the OPMC and her other opponents have had their eyes to the political wind always creating maximum sensationalism in order to create spectacles based on lies for public consumption while the OPMC and its allies aided and abetted pedophiles and rapists.

91. "Even when we can identify a common-law tradition of absolute immunity for a given function, we have considered "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." Tower v. Glover, 467 U. S., at 920. Not surprisingly, we have been "quite sparing" in recognizing absolute immunity for state actors in this context. Forrester v. White, 484 U. S. 219, 224 (1988)."

92. Thus the OPMC and its allies have no right to immunity for their criminal actions in the case of the Plaintiff Dr. I. Ezekwo.

93. "We further decided, however, that prosecutors are not entitled to absolute immunity for their actions in giving legal advice to the police. We were unable to identify any historical or common-law support for absolute immunity in the performance of this function. 500 U. S., at 492-493. We also noted that any threat to the judicial process from "the harassment and intimidation associated with litigation" based on advice to the police was insufficient to overcome the "[a]bsen[ce] [of] a tradition of immunity comparable to the common-law immunity from malicious prosecution, which formed the basis for the decision in Imbler. " Id., at 493, 494. And though we noted that several checks other than civil litigation prevent prosecutorial abuses in advising the police, "one of the most important checks, the judicial process," will not be effective in all cases, especially when in the end the suspect is not prosecuted. Id., at 496. In sum, we held that providing legal advice to the police was not a function "closely associated with the judicial process." Id., at 495."

94. Thus this case demonstrates that the OPMC is outside of its remit in harassing the Plaintiff Dr. I. Ezekwo, and therefore the OPMC has no immunity and is liable.

95. "In this case the Court of Appeals held that respondents are entitled to absolute immunity because the injuries suffered by petitioner occurred during criminal proceedings. That holding is contrary to the approach we have consistently followed since Imbler. As we have noted, the Imbler approach focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.

23

The location of the injury may be relevant to the question whether a complaint has adequately alleged a cause of action for damages (a question that this case does not present, see supra, at 261). It is irrelevant, however, to the question whether the conduct of a prosecutor is protected by absolute immunity. Accordingly, although the Court of Appeals' reasoning may be relevant to the proper resolution of issues that are not before us, it does not provide an acceptable basis for concluding that either the preindictment fabrication of evidence or the post indictment press conference was a function protected by absolute immunity."

96. Again this case demonstrates that the OPMC's sensationalism and lies are not protected by immunity and that the OPMC is liable for their false statements and defamatory acts against the Plaintiff Dr. I. Ezekwo.

97. "To be sure, Burns made explicit the point we had reserved in Imbler, 424 U. S., at 430-431, and n. 33: A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."

98. Thus again the OPMC is liable for its criminal actions against the Plaintiff Dr. I. Ezekwo.

99. "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." Hampton v. Chicago, 484 F. 2d 602, 608 (CA7 1973) 274*274 (internal quotation marks omitted), cert. denied, 415 U. S. 917 (1974). Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." 484 F. 2d, at 608-609."

100. "The reason that lack of probable cause allows us to deny absolute immunity to a state actor for the former function (fabrication of evidence) is that there is no common-law tradition of immunity for it, whether performed by a police officer or prosecutor."

101. "Respondents have not cited any authority that supports an argument that a prosecutor's fabrication of false evidence during the preliminary investigation of an unsolved crime was immune from liability at common law, either in 1871 or at any date before the enactment of § 1983."

102. These further elements of the case again demonstrate that the OPMC has no immunity and is therefore liable for its criminal actions. The OPMC had no probable cause for its illegal actions against the Plaintiff Dr. I. Ezekwo, the OPMC was simply motivated out of malice.

103. "Cf. Burns v. Reed, 500 U. S. 478, 495 (1991): "Indeed, it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice. . . . Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive.""

104. Again as cited in this case, the OPMC went beyond any reasonable bounds or jurisdiction in its illegal acts, thus it has no immunity and is liable.

105.    "Petitioner also alleged that Fitzsimmons released mug shots of him to the media, "which were prominently and repeatedly displayed on television and in the newspapers." Ibid. Petitioner's legal theory is that "[t]hese false and prejudicial statements inflamed the populace of DuPage County against" him, ibid.; see also id., at 14, thereby defaming him, resulting in deprivation of his right to a fair trial, and causing the jury to deadlock rather than acquit, id., at 19."

106.    "Fitzsimmons' statements to the media are not entitled to absolute immunity. Fitzsimmons does not suggest that in 1871 there existed a common-law immunity for a prosecutor's, or attorney's, out-of-court statement to the press. The Court of Appeals agreed that no such historical precedent exists. 952 F. 2d, at 967."

107.    Again the OPMC's show trials against the Plaintiff Dr. I. Ezekwo were defamatory and designed to harden the evil actions that have been taken against the Plaintiff so that it would be more and more difficult for her to attain justice and so that the OPMC's criminal agenda could go on unabated allowing murder, rape and pedophilia to run rampant in American society.  Thus the OPMC is not entitled to immunity and it must cease from all actions against the Plaintiff and compensate the Plaintiff.

108.    ""[Absolute immunity] does not apply to or include any publication of defamatory matter before the commencement, or after the termination of the judicial proceeding (unless such publication is an act incidental to the proper initiation thereof, or giving legal effect thereto); nor does it apply to or include any publication of defamatory matter to any person other than those to whom, or in any place other than that in which, such publication is required or authorized by law to be made for the proper conduct of the judicial proceedings." Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum. L. Rev. 463, 489 (1909) (footnotes omitted). See, e. g., Viosca v. Landfried, 140 La. 610, 615, 73 So. 698, 700 (1916); Youmans v. Smith, 153 N. Y. 214, 220-223, 47 N. E. 265, 267-268 (1897). See also G. Bower, Law of Actionable Defamation 103, n. h, 104-105 (1908)."

109.    "In his complaint, petitioner also charged that the prosecutors violated his rights under the Due Process Clause through extraction of statements implicating him by coercing two witnesses and paying them money."

110.    The OPMC also violated the Plaintiff Dr. I. Ezekwo's Due Process Rights by colluding in RICO conspiracy with the City of Englewood and Dara Govan in the creation of defamatory statements that were designed to corrupt and override the legal process for corrupt political interest.

111.    "Even assuming these premature actions would not be induced by the Court's rule, separating absolute immunity from qualified immunity based on a third-party determination of probable cause makes little sense when a civil plaintiff claims that a prosecutor falsified evidence or coerced confessions. If the false evidence or coerced confession served as the basis for the third party's determination of probable cause, as was alleged here, it is difficult to fathom why securing such a fraudulent determination transmogrifies unprotected conduct into protected conduct."

112.    This case concluded with a highly important point that is of vital importance and precedence for the Plaintiff Dr. I. Ezekwo's case.  The corrupt RICO conspiracy of the OPMC has been documented from the beginning as the OPMC continued to make false and fraudulent statements to defame the Plaintiff.  To put it simply, the OPMC's criminal

behavior cannot protect the OPMC's criminal behavior.  Thus the OPMC is liable and must compensate the Plaintiff Dr. I. Ezekwo.

113.    Rizzo v. Dawson

114.    "The fourteenth amendment prohibits the deprivation of liberty or property without due process of law. A due process claim is cognizable only if there is a recognized liberty or property interest at stake. Board of Regents of California v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)."

115.    As shown by this case The Plaintiff Dr. I. Ezekwo has had her due process rights violated in violation of her constitutional rights.  The Plaintiff's liberty and property interest were her reputation and freedom to practice.  The OPMC should realize that out of hatred and bigotry their enemies cannot become the government's enemies so that the OPMC can further its corrupt interests.

116.    "Although we face for the first time the issue of whether retaliation for assisting with litigation and bringing litigation states a claim under the Constitution, we find the reasoning of the Tenth Circuit in Owens v. Rush, 654 F.2d 1370 (10th Cir.1981), persuasive. In Owens the court noted that assisting in litigation to vindicate civil rights, attending meetings about necessary legal steps and associating for the purpose of assisting persons seeking legal redress were protected by the first amendment. The court relied on the reasoning in NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), which held that civil rights litigation could be a form of political speech and therefore that assisting in such litigation was protected by the first amendment. The Owens court also looked to Supreme Court decisions decided after Button that recognized first amendment protection of any collective action, regardless of its political nature, taken to obtain meaningful access to the courts. See, e.g., United Transportation Union v. Michigan Bar, 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971). The Owens court held that where a government employee was dismissed for assisting his wife with her Title VII sex discrimination suit, his activity was protected by the first amendment and retaliation for engaging in that protected activity would be a violation of his rights. The fact that Owens did not have his own liberty or property interest at stake in the litigation, as would be required for a due process claim, did not preclude his claim for violation of his first amendment rights. See Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972)."

117.    As this case demonstrates,  the retaliation against an individual for seeking access to the courts and justice is a violation of an individual's constitutional rights.  This is what happened to the Plaintiff Dr. I. Ezekwo, who was viciously pursued for years on many fronts in a terrorist campaign by the OPMC and others to suppress a revealing of truth relating to their many crimes and those of the City of Englewood and Dara Govan.

118.    "While it appears that plaintiff alleged no explicit liberty or property interest, procedural requirements in and of themselves, could create a protected interest if the procedures are intended to be a significant substantive restriction on decision-making. Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984)."

119.    "Yet, even were Rizzo's complaint deemed factually deficient, the court should have, but did not, allow Rizzo the opportunity to amend."

120.    Again this case shows how the Plaintiff Dr. I. Ezekwo must be allowed to have justice.

26

121.    <u>Abuse of Process, Malicious Prosecution, Violation of 1st Amendment and Prima Facie Tort</u>

122.    <u>Curiano v. Suozzi</u>

123.    "In the second cause of action plaintiffs contend that the purpose of the Suozzi v Parente action was not to remedy a wrong believed in good faith to have been committed but was brought "for the malicious and intentional purpose of harming defendants therein" and "to punish the plaintiffs for exercising their constitutional right to free speech and to participation in the public election process." Plaintiffs also asserted that institution of the prior action violated a "duty owed plaintiffs to refrain from institution of a baseless legal proceeding" and "was further intended to cause the plaintiffs expense and to burden them with the defense of a protracted legal proceeding", thereby damaging them."

124.    Similarly to this case, the Plaintiff Dr. I. Ezekwo was maliciously harassed by the OPMC to stop her free speech.  The OPMC would not even give the Plaintiff Dr. I. Ezekwo the opportunity to defend herself against the OPMC's false allegations.

125.    "Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective (Board of Educ. v Farmingdale Classroom Teachers Assn., supra, at p 403)."

126.    This case demonstrates abuse of process and malicious prosecution, which is what happened in the case of the Plaintiff Dr. I. Ezekwo.  As shown, the case of the Plaintiff Dr. I. Ezekwo meets all the parameters(elements) of abuse of process as it was carried out by the OPMC.

127.    "First, the process used must involve "an unlawful interference with one's person or property" (Williams v Williams, 23 N.Y.2d 592, 596)."

128.    The OPMC unlawfully interfered with the person and property of the Plaintiff Dr. I. Ezekwo, this clearly demonstrates that the OPMC was involved in abuse of process.

129.    "……the "`gist of the action for abuse of process'", which is "`the improper use of process after it is issued'" (Williams v Williams, supra, at p 596; Dean v Kochendorfer, 237 N.Y. 384, 390; Miller v Stern, 262 App Div 5, 8)."

130.    This above statement clearly describes the behavior of the OPMC as they have been involved in the abuse of process in their ceaseless harassment of the Plaintiff Dr. I. Ezekwo.

131.    "Some years ago this court recognized the general principle that harm intentionally inflicted is prima facie actionable unless justified (see Advance Music Corp. v American Tobacco Co., 296 N.Y. 79; American Guild of Musical Artists v Petrillo, 286 N.Y. 226; Opera on Tour v Weber, 285 N.Y. 348, cert den 314 US 615). That principle has developed into the specific cause of action of prima facie tort consisting of four elements: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful (Burns Jackson Miller Summit & Spitzer v Lindner, 59 N.Y.2d 314, 332; ATI, Inc. v Ruder & Finn, 42 N.Y.2d 454, 458)."

132.    The OPMC meets the parameters of prima facie tort against the Plaintiff Dr. I. Ezekwo as described in this paragraph of the cited case above.

133.    <u>Cook v. Sheldon</u>

27

134.     "Cook sued Troopers Sheldon and Saldana in the Southern District of New York under section 1983, alleging false arrest, malicious prosecution, and malicious abuse of process. He claimed that the Troopers arrested him without probable cause because they were outraged that he should counsel Serrano to keep silent and request a lawyer."

135.     "In a three-paragraph order, the district court denied the Troopers' motion, finding that material issues of fact existed regarding the reason for Cook's arrest. The court stated that "[i]f plaintiff was arrested in retaliation for the exercise of his First Amendment rights, the defense of qualified immunity is unavailable.""

136.     "Cook pleads three causes of action under section 1983: (1) false arrest; (2) malicious prosecution; and (3) malicious abuse of process. The Troopers argue that the district court should have dismissed all three claims by summary judgment on the ground of qualified immunity. Their fundamental position is that, so long as they had probable cause to believe that Cook violated the VIN statute, they are entitled to qualified immunity as a matter of law, regardless of their motives. We disagree."

137.     "For this purpose, "[a] right is `clearly established' if it meets one of three tests: (1) it is defined with reasonable clarity; or (2) the Supreme Court or this Circuit has affirmed its existence; or (3) a reasonable defendant would understand from existing law that his acts were unlawful." Jeffries v. Harleston, 21 F.3d 1238, 1248 (2d Cir.), vacated on other grounds and remanded, ___ U.S. ___, 115 S.Ct. 502, ___ L.Ed.2d ___ (1994)."

138.     "It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause. See Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir.1993); Golino, 950 F.2d at 870."

139.     This case clearly shows how violations of constitutional rights are not to be tolerated, especially when they are in retaliation for the seeking of justice and First Amendment rights.  This is the same thing that the OPMC did to the Plaintiff Dr. I. Ezekwo.  Malicious abuse of process and malicious prosecution also occurred in this above cited case , the OPMC's actions were clearly unlawful and they knew this from the beginning, but chose to partake in a RICO conspiracy and the harassment of the Plaintiff Dr. I. Ezekwo anyway.   The OPMC there partook in malicious abuse of process and malicious prosecution.

140.     "If Cook is right that the Troopers employed a "shoot 'em all, and let God sort 'em out" arrest psychology, their actions were abhorrent to the Fourth Amendment."

141.     "For these reasons, as to the false arrest claim, the Troopers are not entitled to qualified immunity as a matter of law; and the district court properly denied their motion for summary judgment."

142.     Thus in the Plaintiff Dr. I. Ezekwo's case, the OPMC is not entitled to immunity as their actions were similarly abhorrent as has been stated in this above cited case.  The OPMC violated the Plaintiff Dr. I. Ezekwo's constitutional rights.

143.     "Though section 1983 provides the federal claim, we borrow the elements of the underlying malicious prosecution tort from state law. See Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 39 (2d Cir.1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). In New York, a plaintiff alleging malicious prosecution must show: (1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted

28

with actual malice. See Martin v. City of Albany, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306-07 (1977)."

144.    "On the facts pled by Cook, he has demonstrated these elements. (1) The Troopers commenced a criminal proceeding against him by formally charging Cook with violating the VIN statute and having him arraigned before the town justice. See Carl v. Ayers, 53 N.Y. 14, 17 (1873) (warrantless arrest followed by information and preliminary hearing before a magistrate constitutes commencement). (2) The proceeding ended in Cook's favor when the charges against him were dismissed. See Loeb v. Teitelbaum, 77 A.D.2d 92, 100-01, 432 N.Y.S.2d 487, 493-94 (1980) (formal abandonment by prosecutor constitutes favorable termination). Finally, as discussed above, (3) the Troopers lacked probable cause, and, (4) if Cook is to be believed, they were driven by vengeance. See Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03, 406 N.Y.S.2d 443, 444-45, 377 N.E.2d 975, 976-77 (1978) (spite satisfies actual malice requirement)."

145.    This case demonstrates that the Plaintiff Dr. I. Ezekwo's case meets all the parameters of a malicious prosecution carried out by the OPMC.

146.    "Taking Cook's allegations to be true, it is unquestionable that these acts violated Cook's clearly established procedural due process rights: No reasonable law enforcement officer could think it lawful to charge a person with a crime without probable cause and for the sole purpose of retaliation. See Jeffries, 21 F.3d at 1248 (a right is clearly established if "a reasonable defendant would understand from existing law that his acts were unlawful"); Mozzochi, 959 F.2d at 1179; Magnotti, 918 F.2d at 367. Thus, we reject the Troopers' claim that they are immune as a matter of law from liability for malicious prosecution."

147.    Again as in this cited case, the Plaintiff Dr. I. Ezekwo's procedural due process rights were violated by the OPMC.

148.    "As with malicious prosecution, we turn to state law to find the elements of the malicious abuse of process claim. See Raysor, 768 F.2d at 39. See generally Wilson v. Garcia, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (state law is authoritative source of elements of section 1983 cause of action). In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. See Curiano v. Suozzi, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984); Board of Educ. of Farmingdale v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 642, 343 N.E.2d 278, 282 (1975)."

149.    By these parameters stated in this cited case, the OPMC carried out malicious abuse of process in violation of the Plaintiff Dr. I. Ezekwo's constitutional rights.

150.    "Here, the Troopers clearly employed criminal process against Cook by having him arraigned on charges of illegal possession of a car with no VIN. This arraignment caused Cook to be held in custody. See Mormon v. Baran, 35 N.Y.S.2d 906, 909 (Sup.Ct.1942) (legal process means that a court issued the process, and the plaintiff will be penalized if he violates it). Cook alleges that the Troopers did this to harm Cook, as retribution for advising Serrano. See Board of Educ. of Farmingdale, 38 N.Y.2d at 404, 380 N.Y.S.2d at 642-43, 343 N.E.2d at 283 ("collateral objective" includes retribution)."

151. "Procedural due process forbids the use of legal process for a wrongful purpose. See Torres v. Superintendent of Police, 893 F.2d 404, 410 (1st Cir.1990) (procedural due process violations include deprivations "of liberty by a distortion and corruption of the processes of law"). If Cook's malicious abuse of process allegations are true, then, the Troopers violated his clearly established due process rights. Thus, we reject the Troopers' contention that they are entitled to qualified immunity as a matter of law. The district court properly denied summary judgment on the malicious abuse of process claim."

152. The OPMC distorted and corrupted the process of law in the case of the Plaintiff Dr. I. Ezekwo, violating the Plaintiff Dr. I. Ezekwo's constitutional rights and due process rights

153. "For the above reasons, we affirm the district court's denial of summary judgment."

154. "AFFIRMED."

155. <u>Williams v. Williams</u>

156. "We will not blindly apply the words of a statute to arrive at an unreasonable or absurd result. If the statute is so broadly drawn as to include the case before the court, yet reason and statutory purpose show it was obviously not intended to include that case, the court is justified in making an exception through implication. (Matter of Meyer, 209 N.Y. 386; Holy Trinity Church v. United States, 143 U. S. 457; cf. Booth v. Curtis Pub. Co., 15 A D 2d 343, affd. 11 N Y 2d 907; see, also, Crawford, The Construction of Statutes, § 177 [1940].)"

157. "The purpose of section 74 of the Civil Rights Law, as discussed above, is the protection of reports of judicial proceedings which are made in the public interest. In light of this purpose, it is impossible to conceive of the Legislature's intending to protect the defendant's perversion of judicial proceedings. It would be contrary to reason to say that the Legislature considered it necessary to protect such defamation in order to implement the salutary aims of the statute."

158. "We conclude that it was never the intention of the Legislature in enacting section 74 to allow "any person" to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute. "Society has a pervasive and strong interest in preventing and redressing attacks upon reputation", and the courts are delegated with the responsibility of protecting that right. (Rosenblatt v. Baer, 383 U. S. 75, 86.)"

159. This case demonstrates that malicious prosecution and defamation are not protected actions and are not offered immunity, making their instigator liable. Thus the OPMC is liable in the case of the Plaintiff Dr. I. Ezekwo as the OPMC created a malicious prosecution of the Plaintiff Dr. I. Ezekwo and the OPMC also defamed the Plaintiff Dr. I. Ezekwo.

160. <u>Monell v New York City Dept. of Social Services</u>

161. "Although, after plenary consideration, we have decided the merits of over a score of cases brought under § 1983 in which the principal defendant was a school board — and, indeed, in some of which § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, provided the only basis for jurisdiction — we indicated in Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 279 (1977), last Term that the question presented here was open and would be decided "another day." That other day has come

30

and we now overrule Monroe v. Pape, supra, insofar as it holds that local governments are wholly immune from suit under § 1983."

162.                    Thus as this case points out, the OPMC is liable for its criminal actions against the Plaintiff Dr. I. Ezekwo.  The OPMC has no immunity.

163.        Malicious Prosecution and Abuse of Process
164.        Dutt v Kremp
165.        "If society is to have any confidence in the legal system and the administration of justice within our courts, there must be an accountability for derelict lawyers that is equal to the level of accountability we impose on derelict physicians and other professionals. As I view this record, the evidence strongly supports the jury's findings against Dutt. Plainly stated, the jury, by its verdict, announced that lawyers are not privileged to assail the reputation of physicians in court and subject them to the enervating trauma, time and cost of a lawsuit with its concomitant attenuation of professional standing without reasonable cause.[3]"
166.        "…to the effect that "an attorney's reasonable investigation and industrious search of legal authority is an essential component of probable cause." Id. at 254 Cal.Rptr. at 347, 765 P.2d at 509."
167.        "I am persuaded that the rule embraced by the Supreme Court of Arizona in Bradshaw v. State Farm Mut. Auto. Ins., 157 Ariz. 411, 758 P.2d 1313 (1988), is more appropriate. Holding that the test for probable cause is both subjective and objective, the Bradshaw court stated that "[t]he initiator of the action must honestly believe in its possible merits; and, in light of the facts, that belief must be objectively reasonable." Id. 417, 758 P.2d at 1319 (citing Haswell v. Liberty Mutual Insurance Co., 557 S.W.2d 628, 633 (Mo. 1977); Restatement (Second) of Torts § 675 cmt. c (1977); Prosser & Keeton on the Law of Torts § 120, at 893 (5th ed. 1984)) (emphasis in original text)."
168.        "…..the instant case from that of Bull v. McCuskey, 96 Nev. 706, 615 P.2d 957 (1980). In Bull, this court affirmed an award against the attorney who filed a medical malpractice action based upon a determination that substantial evidence in the record supported the finding that the action was filed for the ulterior purpose of coercing a nuisance settlement."
169.        "The elements that must be proved in a malicious prosecution action in addition to the filing of a prior action against the plaintiffs are: (1) a lack of probable cause to commence the prior action; (2) malice; (3) favorable termination of the prior action; and (4) damages. See Chapman v. City of Reno, 85 Nev. 365, 369, 455 P.2d 618, 620 (1969)."
170.        An abuse of process claim consists of two elements: (1) an ulterior purpose other than resolving a legal dispute, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. Kovacs v. Acosta, 106 Nev. 57, 59, 787 P.2d 368, 369 (1990). An "ulterior purpose" includes any "improper motive" underlying the issuance of legal process. See Laxalt v. McClatchy, 622 F. Supp. 737, 751 (D. Nev. 1985).
171.        This case demonstrates that the Plaintiff Dr. I. Ezekwo has been the victim of malicious prosecution and abuse of process by the OPMC, which is attempting to take away all the Plaintiff's rights for corrupt financial and political gain. The OPMC is clearly acting out of malice and hate to shift the proceedings of the government in a fashion that hurts the Plaintiff.

172.    <u>Malicious Prosecution and Abuse of Process(contd)</u>

173.    <u>Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A</u>

174.    "In Trussell, this court examined the development of case law in Ohio setting forth the elements of the tort of malicious criminal prosecution, contrasting the elements of that tort with the elements of the tort of malicious civil prosecution. The Trussell court, applying paragraph one of the syllabus of Rogers v. Barbera (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162, observed: "The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." Trussell, supra, at syllabus."

175.    "As was noted by the Trussell court, the elements of the tort of malicious civil prosecution were set forth in Crawford v. Euclid Natl. Bank (1985), 19 Ohio St.3d 135, 139, 19 OBR 341, 344, 483 N.E.2d 1168, 1171: "`(1) malicious institution of prior proceedings against the plaintiff by defendant, * * * (2) lack of probable cause for the filing of the prior lawsuit, * * * (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of the prior proceedings * * *."' (Citations omitted.)"

176.    "We accept the proposition that the tort of malicious civil prosecution  does not provide a remedy for a situation in which process is used to accomplish an improper ulterior purpose. Such a situation occurs when there is an "act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process * * *." Id. at 898. Accordingly, we recognize the tort of abuse of process as a distinct tort in its own right, distinguishable from the tort of malicious civil prosecution. See Clermont Environmental Reclamation Co. v. Hancock (1984), 16 Ohio App.3d 9, 16 OBR 9, 474 N.E.2d 357; Avco Delta Corp. v. Walker (1969), 22 Ohio App.2d 61, 51 O.O.2d 122, 258 N.E.2d 254."

177.    "Having determined that Ohio recognizes the tort of abuse of process, we now address the elements of the tort. We hold that the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process"

178.    Again this case demonstrates that the OPMC is involved in malicious prosecution and abuse of process in the Plaintiff Dr. I. Ezekwo's case.

## 179.    Legal Argument and Case Law (continued)

180.    18 U.S.C. § 1503 defines "obstruction of justice" as an act that "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice."

181.    <u>OBSTRUCTION OF JUSTICE</u>

182.    1.    By 18 U.S.C. §1503 "obstruction of justice" is described as any act that "corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs or impedes or endeavors to influence, obstruct or impede, the due administration of justice"  The OPMC has met this definition by buying over corrupt judges to steal from the Plaintiff and take away her constitutional rights.

32

183.    2.    18 U.S.C. §1505 subjects to criminal liability one who "corruptly influences, obstructs or impedes the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States."  The OPMC's activities fall under this statute as its actions are impeding ongoing investigations into its behavior by the Department of Justice and the State Attorney of New Jersey, also The OPMC is illegally influencing other legal proceedings and investigations in the hopes of violating the Plaintiff.

184.    3.    The OPMC's actions  also reach the nexus requirement of 18 U.S.C. §1512 as by Aguilar, 515 at 599, 115 S. Ct 2357 as the conduct of the above mentioned actors against the Plaintiff has "a relationship in time, causation or logic with the judicial proceedings" also "the endeavor must have the natural and probable effect of interfering with the due administration of justice"  The actions the OPMC reach this nexus requirement and are therefore illegal.

185.    4.    The OPMC's obstruction of justice is purposeful, United States v. Mullins 22 F. 3d 1365, 1370(CA6 1994), United State v. Ryan 455 F. 2d 728, 734 (CA9 1972), Pettibone v. United States, 148 U.S. 197 (1893).  Also the "natural and probable" consequence of their actions interfere with due administration of justice, United States v. Thomas, 916 F2.d 647(11 Cir 1990).  In United States v. Brand, 775 F.2d 1460(11 Cir. 1985) the court stated that 18 U.S.C. 1503 proscribes conduct "which produces or which is capable of producing an effect that prevents justice from being duly administered." This is also in Cole v. United States, 329 F.2d 437, 439 (9th Cir.).  Also in United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65L.Ed. 553(1921) it states 18 U.S.C. §1503 covers "any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent." In United States v. Griffin, 589. F.2d 200, 204 (5th Cir) it states a perjurious grand jury witness can impede justice by "delaying the punishment of the guilty."   These legal cases all demonstrate the OPMC is guilty of obstruction of justice.

186.        The OPMC is also causing the Plaintiff irreparable harm. Kamerling v. Massanari 295 F.3d 206, 214 (2d Cir. 2002), Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001).

## INTERFERENCE, COERCION, INTIMIDATION, RETALIATION AND DEFAMATION

187.    Defendants, The OPMC violated 18 U.S. Code §35 which states " whoever willfully and maliciously, or with reckless disregard for the safety of human life, imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by this chapter or chapter 97 or chapter 111 of this title-shall be fined under this title, or imprisoned not more than five years, or both"

188.    By intimidating the Plaintiff and significant others  the OPMC   violated 42 U.S. Code § 3617 which states "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

189.    Defendants the OPMC violated 42 U.S. Code § 12203 that states "(a)RETALIATION No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.(b)INTERFERENCE, COERCION, OR INTIMIDATION It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

190.    The threats from the OPMC  are continuous and present United States v. Navarro, 608 F. 3d 529 (9th Cir 2010)); Frasher v. State, 260 A. 2d 656 (Md. Ct. Spec. App. 1970); People v. Petznick, 114 Cal. App. 4th 663(2003); State v. Matson, 921 P. 2d 790 (Kan. 1996).  Also see United States v. Blanco, 754 F. 2d 790 940 (11th Cir. 1985).  The threats from the OPMC to the Plaintiff are also of the standard of a well grounded fear. Ruffin v. State, 992 So.2d 1165 (Miss. 2008).  Also there was no fault on the part of the Plaintiff that brought about these threats by the OPMC; and thus there cannot be limitations on the fact that there was coercion State v. Gay, 434 S.E. 2d 840 (N.C. 1993) United States v. Blanco, supra.

191.    In the State of New Jersey, In the New Jersey Code of Criminal Justice criminal justice it is stated " Offense defined. A person is guilty of criminal coercion if, with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct he threatens to: (2) accuse anyone of an offense (3) Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute (4) Take or withhold action as an official, or cause an official to take or withhold action (6) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense (7) Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships." NJ Rev Stat 2C:13-5(2013)Also the New Jersey code of criminal justice states "Criminal coercion is a crime of the fourth degree unless the threat is to commit a crime more serious than one of the fourth degree or the actor's purpose is criminal, in which case the offense is a crime of the third degree."

192.    NJ Rev Stat 2C:13-5(2013) The OPMC is guilty of criminal coercion as defined above in the New Jersey Code of Criminal Justice as they are intentionally harming the Plaintiff and her colleagues in all the ways defined in this statute. Due to their criminal acts, the OPMC must be criminally prosecuted.

## 193.    <u>VIOLATIONS OF RICO ACT</u>

194.    The OPMC, Dara Govan, the City of Englewood Police Department   identified the Plaintiff as a common enemy. This falls strictly under RICO but is also covered by Anti-SLAPP (strategic lawsuit against public participation) laws

195.    The OPMC has shown repeat violations of the RICO law that fall under the RICO act.  The sections of the RICO act they have violated are manifold, including section 1344 (relating to financial institution fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to the obstruction of criminal investigation), section 1511 (relating to obstruction of state or local law enforcement), section 1512 (relating to tampering with a witness, victim or informant), section 1513 (relating to retaliation against a witness, victim or informant), section 1951 (relating to interference with

34

commerce, robbery or extortion), section 1546 (relating to fraud and misuse of visas, permits, and other documents), section 1952 (relating to racketeering), section 1956 (relating to laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity),.   The OPMC has also violated the Continuing Criminal Enterprise Statute and with corrupt officials are involved in extortion under color of authority as they are illegally gaining by stealing the Plaintiff's property(her license).

196.    The OPMC harassed the Plaintiff  Dr.Ezekwo at her home.  There has been documentation of individuals and entities involved in corrupt enterprises(United States v. Kim, Mullen Commission) seeking to skew the legal system in their favor by creating lies and taking up legal time harassing others (Brady v. Maryland, ProPublica.org report-The NYPD Files)the OPMC and its criminal associates  fall under this banner.

197.    The RICO act was passed to stop criminal enterprise and the OPMC and its criminal associates   clearly fall under this definition Russell v. United States, 464 U.S. 16, 26-27, 104 S. Ct 296, 302-303 78 L. Ed 2d 17(1983); United States v. Turkette, 452 U.S. 576, 589, 101 S S. Ct 2524, 2532, 69 L. Ed. 2d 246 (1981).  By Sedima, S.P.R.L. v Imrex Co., 473 U.S. 479, 496, 105 S. Ct 3275, 3285, 87 L. Ed 2d 346 (1985),The OPMC has shown a violation of Section 1962(c ) by (1) conduct (2)of an enterprise (3) through a pattern (4) of racketeering activity, thus the OPMC  meets the requirement for prosecution due to violation of RICO.   Defendant the OPMC all so falls under the more expansive view of RICO due to them being an enterprise that is involved in numerous acts of racketeering activity that have already been outlined herein. United States v. Phillips 664 F. 2d 971, 1011(5th Cir. Unit B Dec. 1981) cert. denied, 457 U.S. 1136, 102 S. Ct 1265 73 L. Ed. 2d 1354 (1982)

198.    The Defendant the OPMC comes under an enterprise for purposes of prosecution for violation of RICO as enterprise is defined as including any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.A. 1961(4) (West 1984).  In United States v. Delano , 825 F. Supp. 534, 538-39(W.D.N.Y. 1993),aff'd in part, 55 F. 3d 720(2d Cir.1995), cases cited therein, it is stated and held by courts that enterprise has an expansive statutory definition so as to effectuate remedial purposes, this being part of how Congress mandated a liberal construction of the RICO statute.

199.    The Defendant the OPMC meets the test of a pattern of racketeering activity as they have countless cases of racketeering every year not just the two within ten years described in RICO. 18 U.S.C.A. 1961(4) (West 1984) and Congress intended this idea of a pattern to be very flexible H.J. Inc., v. Northwestern Bell Tel. Co. 492 U.S.  229, 239, 109 S.Ct 2893, 2900, 106 L. Ed. 2d 195 (1989).  The OPMC also falls under the requirement because their racketeering predicates are related and they pose a threat of continued criminal activity and are a serious threat to society. Id The relation of Defendant the OPMC's racketeering predicates are present  and fall under RICO as they have the same purposes, the same results, the same participants, the same victims, the same methods of commission and are not isolated events, and are clearly interrelated by their distinguishing characteristics. Id at 240, 109 S. Ct at 2901; Ticor Title Ins. Co. v. Florida, 937 F. 2d 447, 450(9th Cir. 1991). It has also been defined that the degree to which a pattern is established is related to the degree of proximity, or any similarities in goals or methodology, or the number of repetitions; Defendants the OPMC falls under

this.  United States v. Indelicato 865, 865 F. 2d 1370, 1382(2d Cir.), cert denied, 493 U.S. 811, 110 S. Ct. 56, 107 L.Ed. 2d 24 (1989)

200.    Defendant the OPMC meets the continuity part of RICO as by H.J., Inc 492 U.S. at 241-42 continuity refers to either a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.  Defendant the OPMC's future crimes are inevitable and their criminal activity is long-term, this falls under the RICO continuity requirement as (1)the acts are part of a long term association that exists for criminal purposes and (2)  they are a regular way of them conducting their daily business, and (3) they are a regular way of them conducting their enterprise.Id Judge Scalia wrote it would be absurd to say that "at least a few months of racketeering activity…is generally for free, as far as RICO is concerned" Id at 254, 109 S.Ct at 2908. Therefore as Defendant the OPMC's predicate acts demonstrate the threat of long-term racketeering activity, a RICO pattern has been established. Id at 242, 109 S. Ct. at 2902 .The RICO statute states that it is illegal to conspire to violate any of the subsections of 18 U.S.C.A. 1962, which the Defendant the OPMC did.

201.    The requisite for RICO conviction is (1) that the defendant agreed to commit the substantive racketeering offense through agreeing to participate in two racketeering acts ;( 2) that he knew the general status of the conspiracy and (3) that he knew the conspiracy extended beyond his individual role.  United States v. Rastelli 870 F. 2d 822, 828 (2d Cir.), cert. denied, 493 U.S. 982, 110 S. Ct. 515, 107 L. Ed. 2d 516 (1989).  Also it has been stated "We adhere to the concept that agreement among the coconspirators is the critical element of a RICO conspiracy and hold that it is irrelevant whether a defendant agrees to commit the racketeering acts as a principal or as an aide and abettor.  If a defendant agrees personally to commit, or to aid and abet the commission of, two predicate acts he may be convicted of a RICO conspiracy violation" United States v Rastelli (citing United States v. Cauble, 706 F. 2d 1322, 1341-42 (5th Cir. 1983), cert. denied, 465 U.S. 1005, 104 S. Ct. 996, 79 L. Ed. 2d 229 (1984)) A defendant can be convicted of RICO violation by aiding and abetting the commission of racketeering acts. United States v Daly, 842 F. 2d 1380, 1389-92 (2d Cir.) And also it is stated "If all of RICO's other requirements are met, an aide and abettor of two predicate acts can be civilly liable under RICO" Petro-Tech, Inc. v Western Co. of North America, 824 F.2d 1349, 1356 (3d Cir. 1987).  And again it is stated "We conclude that under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses"  United States v. Local 560 of International Brotherhood of Teamsters, 780 F. 2d 267, 288-89 and n. 25 (3d Cir. 1985).  By these above mentioned cases and legal tenets it is clear that the Defendants the OPMC is in violation of RICO in their illegal actions against the Plaintiff. The Defendant the OPMC falls under the definition of a racketeering enterprise and has various coconspirators (City of Englewood, Dara Govan etc) in their harassment of the Plaintiff, their illegal activities will inevitably continue in the future, they have not only harassed the Plaintiff by stealing from her(taking her license) and assailing her at her property but have also put the lives of her family and associates at risk.  The Defendant the OPMC has shown a criminal pattern of repeated illegal activity that will continue as long as they exist, due to criminality being intrinsic to their organization.  The Defendant the OPMC and its criminal associates must be criminally prosecuted.

36

## 202.                    **IRREPARABLE HARM**

203.        Under these circumstances Dr. I. Ezekwo and her family are suffering irreparable harm and the loss of constitutional rights.  Irreparable harm " is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation" Kamerling v. Massanari.

204.        "The injury must be both certain and great and that it must not be  merely serious or substantial Irreparable  is often suffered when 'the injury cannot be adequately atoned for in money' or when 'the district court cannot remedy [the injury] following a final determination on the merits.'" Prairie Band of *1259 Potawatomi Indians 253 F.3d at 1250.  The decade long assault against Dr. I. Ezekwo, her family and associates make her case fall under this definition as the criminal agenda being acted out by the OPMC is part of a series of actions against Dr. I.  Ezekwo that have worked in concert with various criminal actors who want to harm her for their criminal agenda, Dr. Ezekwo's life will be at risk as will the lives of her family and associates if the OPMC is not fully investigated and held accountable for their actions.

205.        Also a plaintiff suffers irreparable harm when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001)(citing Tri-State Generation & Transmission Assoc., Inc v. Shoshone River Power, Inc., 874 F.2d 1346, 1354 (10th Cir. 1989).  This irreparable harm clearly applies to Dr. Ezekwo.

206.        Irreparable harm is harm to a party that cannot be monetarily quantified, or which cannot be cured, usually because one party cannot collect damages from the other, as Dr. Ezekwo cannot get remuneration or help once her income(license and reputation) is stolen by the OPMC, her case clearly falls under  this definition as in RJR-MacDonald, at p.341; Christian Philip v. Rajalingam, 2020 ONSC 1925, at para.33.  Also in Amphenol Canada Corp v. Sundaram, 2020 ONSC 328(Div. Ct.) at paras 37-39, F.L. Meyers stated "the defendant's ability to pay is very much a part of the interlocutory injunction calculus".  And in 2092280 Ontario Inc v. Voralto Group Inc., 2018 ONSC 2305 (CanLII) at para.28. the court wrote "Judgements for damages cannot reasonably be expected to be affordable or collectible against fraudsters".  Thus Dr. Ezekwo cannot expect to ever recover from the loss she has suffered at the hands of violent criminal fraudsters the OPMC if their evil deeds are allowed to proceed by interfering with the legal process and illegally stealing Dr. Ezekwo's income(license and reputation).

207.        <u>Additional Violations</u>

208.        The OPMC violated 18 U.S. Code 35 which states " whoever willfully and maliciously, or with reckless disregard for the safety of human life, imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by this chapter or chapter 97 or chapter 111 of this title-shall be fined under this title, or imprisoned not more than five years, or both"

209.        By intimidating the Plaintiff at her residence the OPMC violated 42 U.S. Code 3617 which states "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

37

**210.    DEFAMATION**

211.    Defamation is a "communication that tends to harm the reputation of another to lower his estimation in the community or deter third parties from associating with him." Restatement (2nd) of Torts, §559.  A statement is defamatory if it has a negative impact on someone's reputation among a substantial number of people in the community, even if the number of impacted people is not a majority of the community. Restatement (2nd) of Torts, §559, comment e.

212.    Every defamation claim must meet the following four elements: (a)  a false statement concerning another;(b) the statement must be defamatory;(c) a publication to a third party; and(d) harm to the plaintiff's reputation. Restatement (2nd) of Torts, §558.

213.    Therefore, in order for an action of defamation to arise, the defendant must communicate his defamatory statement to someone other than the plaintiff. See Simpson v. Mars, Inc., 929 P.2d 966 (Nev. 1997).  The OPMC has broadcast its statements against the Plaintiff Dr. I. Ezekwo to people far and wide, therefore the OPMC is defaming the Plaintiff Dr. I. Ezekwo.

214.    Further, in order to recover for defamation, the Plaintiff Dr. I. Ezekwo must prove that the defendant intentionally communicated the defamatory statement to a third person, or that the defendant negligently failed to exercise due care in making sure the statement was not published. See Barnes v. Clayton House Motel, 435 S.W.2d 616 (Tex. 1968). Again, the OPMC has been spreading malicious statements about the Plaintiff Dr. I. Ezekwo to everyone the OPMC can meet and is attempting to cover these moves clandestinely, this all also falls under the RICO Act and is also clearly defamation.

215.    An individual who has an unsullied name is a greater victim of defamation.  . See Jackson v. Longcope, 476 N.E.2d 617 (Mass. 1885).  Thus defamation is the crime the OPMC enacted against the Plaintiff Dr. I. Ezekwo, who as a physician and priest has tirelessly helped and healed thousands all her life.

216.    The second prong in determining whether or not a statement has the potential to injure the plaintiff's reputation is determining whether or not the statement can be interpreted to carry a defamatory meaning. In determining this, courts will look at what a reasonable person would naturally interpret the statement to mean within the context in which the statement appears. See Romain v. Kallinger, 537 A.2d 284 (N.J. 1988).  The OPMC's allegations against the Plaintiff Dr. I. Ezekwo are clearly outrageous with many racist and discriminatory undertones, trying to malign the Plaintiff Dr. I. Ezekwo and make the Plaintiff Dr. I. Ezekwo seem marginalized when in fact it is the OPMC that is the evil-doer.

217.    Most states assume that a speaker who defames another necessarily has the requisite guilty state of mind. In Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122 (1st Cir. 1997), the court held that in Maine, all defamation claims need showing of fault, which requires the Plaintiff Dr. I. Ezekwo to prove that the defendant was at least negligent.  The OPMC's actions and statements against the Plaintiff Dr. I. Ezekwo are purposeful and intentional to cause harm, thus the OPMC meets the standard of defamation.

218.    In The New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the Supreme Court held that for a publicly-known figure to succeed on a defamation claims, the public-figure The Plaintiff Dr. I. Ezekwo must show that the false, defaming statements was said with "actual malice." The Sullivan court stated that "actual malice" means that the defendant

38

said the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not."  The Plaintiff Dr. I. Ezekwo's  actual malice claim against the OPMC meets the "clear and convincing" evidence requirement standard of Sullivan. The Plaintiff Dr. I. Ezekwo's case also meets the Sullivan requirement (in precise language of Sullivan court)  of  "the convincing clarity which the constitutional standard demands."

219.        The OPMC has neither absolute privilege nor conditional privilege to defame  the Plaintiff Dr. I. Ezekwo Kilgore v. Younger, 30 Cal.3d 770 (1982). Weenig v. Wood, 349 N.E.2d 235 (Ind. 1976).  The OPMC's defamation against the Plaintiff Dr. I. Ezekwo is also not protected by the First Amendment.

220.        Immunity does not exist for individuals who engage in criminal activity, for individuals who connive with, aid and abet the criminal activity of another individual, or to an individual for damages sustained by a person who has been harmed by the wrong doer's connivance with, aiding and abetting, another individual's criminal activity.  The OPMC falls under these parameters and thus has no immunity.

221.        The Illinois Supreme Court has held that "if the magistrate has not such jurisdiction, then he and those who advise and act with him, or execute his process, are trespassers." Von Kettler et.al. v. Johnson, 57 Ill. 109 (1870).  Thus the OPMC by this standard has acted in violation of the law and has no immunity.

222.        The Illinois Supreme Court held that if a court "could not hear the matter upon the jurisdictional paper presented, its finding that it had the power can add nothing to its authority, - it had no authority to make that finding." The People v. Brewer, 128 Ill. 472, 483 (1928).  Thus this also shows how the OPMC acted outside its authority and jurisdiction in its illegal acts against the Plaintiff Dr. I. Ezekwo, thus the OPMC has no immunity.

223.        The U.S. Supreme Court, in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." . By law, the OPMC is a state officer.  The OPMC then acts not as a government body , but as a private individual (in its person).  The OPMC thus has no immunity from government and its actions are solely its own as a private citizen drenched in evil.

224.                    INJURIES AND CLAIMS

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein

225.                    COUNT 1
 **VIOLATION OF 42 U.SC. 1983 AND FEDERAL STATUTORY RIGHTS AND VIOLATIONS OF 4TH , 5TH, 6TH, 7TH, 8TH, 14TH, AMMENDMENTS OF THE UNITED STATES CONSTITUTION.**

Defendants have deprived Plaintiff of her Federal constitutional and statutory rights by failing and refusing to provide Plaintiff with trial in her own defense on the false accusations they levied on the Plaintiff when she was ill, disabled and unable to defend herself. Furthermore Defendants have refused any and all attempts that Plaintiff has made by herself and her counsel to arrange a hearing so that she can exonerate herself now that she is able to do so and worse still defendants have refused multiple pleadings Plaintiff counsel has made to bring Plaintiff's innocence to light and resolve the case in her favor. Instead defendant OPMC refused, continued to keep the false evidence in her public records shaming her and others like DEA insisting that she must sign that the false information they have in her record is true even though Plaintiff knows it is false and Plaintiff halting her application there until litigation with defendant OPMC is resolved in her favor so she can then prove her innocence to all concerned. Defendant OPMC has also shared this information with other states like New Jersey, meaning also that Plaintiff must await this resolution to show her innocence and same with all other states where Plaintiff had covid registrations for telemedicine in covid care efforts. Same also with other carriers and anybody seeking information who OPMC defendant is sharing this false information with and depriving Plaintiff opportunities. Loss of revenue and reputation and goodwill is innumerable and insurmountable as long as OPMC has and continues to have this false information in Plaintiff's record.

Defendants acted under the color of law when Defendants deprived Plaintiff of Federal rights, professional interests and otherwise discriminated against Plaintiff based on prior Plaintiff's disability and race, gender and national origin. As a direct and proximate result of Defendants' violation of 42 U.S.C. 1983 and other state and federal statutes, Plaintiff has sustained injuries and damages

From the above pleadings it is obvious that Plaintiff has been harmed by Defendants and is hereby presenting for the court's consideration for just compensation of loss incurred and will continue incur in the amount of **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

226.                                        **COUNT 11**
227.    **VIOLATION OF NEW YORK AND FEDERAL STATUTE AND REGULATIONS AND COVID 19 MORATORIUM VIOLATIONS AND REFUSING TO GRANT THE PLAINTIFF THE RIGHTS GRANTED OTHERS AND DISCRIMINATING AGAINST HER AND REFUSING TO PROVIDE HER CLEARANCE FOR COVID RESPONSE AND REVENUE AND PAYMENT AS OPMC REFUSED TO REMOVE THE FALSE INFORMATION**
228.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth therein.
229.    The failure of the Defendants to provide Plaintiff with the alternative medical services violates provisions of the Federal and state statutes and regulations, including without limitation, the following: ability to fully participate in telemedicine and aid other New Yorkers who would have benefited from Plaintiffs expertise otherwise.
230.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained injuries and damages and continues to suffer loss of revenue,

reputation  and ability to help others remotely and damages in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

231.                      COUNT 111
**DISCRIMINATION BASED ON DISABILITY ,RACE,  RELIGION, GENDER,  AGE AND NATIONAL ORIGIN**

232.       Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

233.       Plaintiff has been denied and excluded from the benefits made available for physicians before and  during the pandemic. The services available in the community to qualified individual physicians  in the community was denied Plaintiff by the Defendants and hearing   denied her despite her  request and willingness to  stand trial in her own defense and her attorney's  persistent request to OPMC to grant Plaintiff a hearing  so she can present her case and prove her innocence. This very act shut out Plaintiff from the community of her own peers
Denying Plaintiff the equal/same opportunity to receive the benefits of the programs available to other qualified disabled  individuals. Defendants' actions violate Plaintiff's right.
As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained injuries, and damages and continues to suffer loss of profession, shame, revenue  and property and damages in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

234.                      COUNT 1V

235.       **ABUSE OF PROCESS; ABUSE OF POWER; PUBLIC SHAMING; OBSTRUCTION OF JUSTICE; INTERFERENCE, COERCION,  INTIMIDATION, RETALIATION AND DEFAMATION; VIOLATIONS OF  RICO ACT**

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

236.       Defendants together and severally used abuse of legal process, violation of Plaintiff's rights, wrongful serving of notices, claiming they enclose documents they did not enclose it became a sewer of illegality and lawlessness. And refusing to share required legal information with Plaintiff in a timely fashion to enable Plaintiff to act in her best interest to defend herself.  By co opting the Judges with a conflicts  of interest that was not supposed to hear the case and publicly shaming Plaintiff due to prior illness and  refusing to listen to current evidence and current law, the Defendants obstructed justice and discriminated against Plaintiff and primed the situation and psychologically and deceptively created cause to violate Plaintiff's  professional property interest  from her  without due process and while breaking the law and obstructing justice and violating the RICO Act.  The OPMC, Dara Govan, the City of Englewood Police Department

identified the Plaintiff as a common enemy. This falls strictly under RICO but is also covered by Anti-SLAPP (strategic lawsuit against public participation) laws

As a direct and proximate result of Defendants' unlawful  actions and discrimination, abuse of process, obstruction of justice and public shaming, defamation  Plaintiff has sustained injuries and damages  in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

237.                                    **COUNT V**

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

238.        **MALICIOUS PROSECUTION AND ABUSE OF PROCESS. FABRICATION OF FALSE EVIDENCE, VIOLATIONS OF DUE PROCESS RIGHTS, DEFAMATION AND INCITEMENT OF CRIMES, VIOLATION OF 1ST AMENDMENT RIGHTS, RETALIATION, CAPRICIOUS ACTS AND VIOLATION OF CONSTITUTIONAL RIGHTS ABUSE OF PROCESS, MALICIOUS PROSECUTION, VIOLATION OF 1ST AMENDMENT AND PRIMA FACIE TORT**

This case demonstrates that malicious prosecution and defamation are not protected actions and are not offered immunity, making their instigator liable.  Thus the OPMC is liable in the case of the Plaintiff Dr. I. Ezekwo as the OPMC created a malicious prosecution of the Plaintiff Dr. I. Ezekwo and the OPMC also defamed the Plaintiff Dr. I. Ezekwo. The OPMC also violated the Plaintiff Dr. I. Ezekwo's Due Process Rights by colluding in RICO conspiracy with the City of Englewood and Dara Govan in the creation of defamatory statements that were designed to corrupt and override the legal process for corrupt political interest.

As a direct and proximate result of Defendants' unlawful  actions, malicious prosecution, abuse of process, fabrication of evidence, violations of due process rights, defamation and incitement of crimes, violation of first amendment rights, retaliation, capricious acts and violations of constitutional rights , the abuse of process and malicious prosecution and violation of 1st amendment rights and prima facie tort, Plaintiff has sustained injuries and damages  in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

239.                                    **COUNT VI**

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

240.        **VIOLATION OF FOURTEENTH AMENDMENT AND DUE PROCESS RIGHTS**

241.        "The fourteenth amendment prohibits the deprivation of liberty or property without due process of law. A due process claim is cognizable only if there is a recognized liberty or property interest at stake. Board of Regents of California v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)."

242. As shown by this case The Plaintiff Dr. I. Ezekwo has had her due process rights violated in violation of her constitutional rights. The Plaintiff's liberty and property interest were her reputation and freedom to practice. The OPMC should realize that out of hatred and bigotry their enemies cannot become the government's enemies so that the OPMC can further its corrupt interests.
As a direct and proximate result of Defendants' unlawful actions, and violation of Plaintiff Dr. Ezekwo's fourteenth amendment and due process rights Plaintiff has sustained injuries and damages in the amount of **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

243. **COUNT VII**
Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

## 244. **IRREPARABLE HARM**

245. Under these circumstances Dr. I. Ezekwo and her family are suffering irreparable harm and the loss of constitutional rights. Irreparable harm " is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation" Kamerling v. Massanari.
As a direct and proximate result of Defendants' unlawful actions, and violation of Plaintiff Dr. Ezekwo's constitutional and due process rights Plaintiff has suffered irreparable harm and sustained injuries and damages in the amount of **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

246. **COUNT VIII**
Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

## 247. **DEFAMATION**

248. Defamation is a "communication that tends to harm the reputation of another to lower his estimation in the community or deter third parties from associating with him." Restatement (2nd) of Torts, §559. A statement is defamatory if it has a negative impact on someone's reputation among a substantial number of people in the community, even if the number of impacted people is not a majority of the community. Restatement (2nd) of Torts, §559, comment e.

249. Every defamation claim must meet the following four elements: (a) a false statement concerning another;(b) the statement must be defamatory;(c) a publication to a third party; and(d) harm to the plaintiff's reputation. Restatement (2nd) of Torts, §558.

250. Therefore, in order for an action of defamation to arise, the defendant must communicate his defamatory statement to someone other than the plaintiff. See Simpson v. Mars, Inc., 929 P.2d 966 (Nev. 1997). The OPMC has broadcast its statements against the Plaintiff Dr. I. Ezekwo to people far and wide, therefore the OPMC is defaming the Plaintiff Dr. I. Ezekwo.

251. Further, in order to recover for defamation, the Plaintiff Dr. I. Ezekwo must prove that the defendant intentionally communicated the defamatory statement to a third person, or that the defendant negligently failed to exercise due care in making sure the statement

was not published. See Barnes v. Clayton House Motel, 435 S.W.2d 616 (Tex. 1968). Again, the OPMC has been spreading malicious statements about the Plaintiff Dr. I. Ezekwo to everyone the OPMC can meet and is attempting to cover these moves clandestinely, this all also falls under the RICO Act and is also clearly defamation.

252.    An individual who has an unsullied name is a greater victim of defamation.  . See Jackson v. Longcope, 476 N.E.2d 617 (Mass. 1885).  Thus defamation is the crime the OPMC enacted against the Plaintiff Dr. I. Ezekwo, who as a physician and priest has tirelessly helped and healed thousands all her life.

253.    The second prong in determining whether or not a statement has the potential to injure the plaintiff's reputation is determining whether or not the statement can be interpreted to carry a defamatory meaning. In determining this, courts will look at what a reasonable person would naturally interpret the statement to mean within the context in which the statement appears. See Romain v. Kallinger, 537 A.2d 284 (N.J. 1988).  The OPMC's allegations against the Plaintiff Dr. I. Ezekwo are clearly outrageous with many racist and discriminatory undertones, trying to malign the Plaintiff Dr. I. Ezekwo and make the Plaintiff Dr. I. Ezekwo seem marginalized when in fact it is the OPMC that is the evil-doer.

As a direct and proximate result of Defendants' unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights and defaming Plaintiff;  Plaintiff has suffered permanent damage to her reputation and good standing amongst her peers and irreparable harm and  sustained injuries and damages  in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

## COUNT    IX

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

**<u>VIOLATION  OF REHABILITATION ACT OF 1973 AND AMERICANS DISABILTY ACT OF 1990</u>**

The Rehabilitation Act of 1973 is a federal law prohibiting discrimination against people with disabilities by federal agencies, federal contractors, or programs receiving federal funds and also all state agencies Also referred to as the Rehab Act.  It is generally considered a precursor to the Americans with Disabilities Act (ADA), which passed in 1990. The ADA is broader than the Rehab Act, however, in that is applies to disabilities in public services, places of public accommodation—such as restaurants, hotels, and theaters—and also requires employers to make reasonable accommodations to allow employees with disabilities to do their jobs. While narrower in its application, the standards in the Rehab Act are generally the same as those in the ADA. Both protect individuals with physical or mental disabilities that substantially limits one or more major life activities who cannot perform the essential job-related requirements without reasonable accommodation.

Section 503 of the Rehabilitation Act of 1973 is a law that prohibits federal contractors and subcontractors from discriminating in employment against individuals with disabilities and requires employers take affirmative action to recruit, hire, promote, and retain these individuals.

Another aspect of the disability act is for agencies to make accommodations and adjustments for individual who are in acute state of illness and incapacitated so that they cannot participate  in activities required of them until they recover. That is the case of Plaintiff,  Dr. Ezekwo where OPMC refused for the Plaintiff  to recover from acute debilitating illness before testifying on her case and then holding a hearing  where  her testimony of what took place is her defense in the matter, forcing Plaintiff's attorney to attend a hearing without the Plaintiff  and then ruling against Plaintiff with the preponderance of evidence showing Plaintiff did nothing wrong . Even when Plaintiff and counsel have continued  to press for a hearing, OPMC ignored it and continued to prosecute Plaintiff even though she is innocent.  And continuing to monitor her every move even though there is nothing to monitor and continuing to harass her with threat of further prosecution even though she is innocent.  AS a consequence of these actions Plaintiff has suffered  disrepute, loss of income and opportunities and revenue.

As a direct and proximate result of Defendants' unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights and  and the rehabilitation and disability act, defaming Plaintiff;  Plaintiff has suffered permanent damage to her reputation and good standing amongst her peers and irreparable harm and  sustained injuries and damages  in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

254.                              **COUNT  X**

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

## **VIOLATION OF CIVIL RIGHTS ACT OF 1964**

**255.**        Defendants deprived the Plaintiff of her constitutional rights by their harmful acts, by harassing her and refusing her license clearance and directly and indirectly  and stopping her from performing  telemedicine and continuing to monitor her every move and insisting on the same while still denying her a hearing and Defendant's violation of the Civil Rights Act of 1964 , the Plaintiff has sustained injuries and damages and financial loss. As a direct and proximate result of Defendants' unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights defaming Plaintiff;  Plaintiff has suffered permanent damage to her reputation and good standing amongst her peers and irreparable harm and  sustained injuries and damages  in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial**

**256.**                              **COUNT  XI**

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

**VIOLATION OF 42 U.S. CODE § 1985 - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

Defendants deprived the Plaintiff of her constitutional rights by obstructing justice and harassing the Plaintiff, the Defendants also illegally intervened in a legal process to aid various criminal acts against the Plaintiff.  As a direct and proximate result  of the Defendants' violation of 42 U.S. Code § 1985, the Plaintiff has sustained injuries and damages.

As a direct and proximate result of Defendants' unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights , obstructing justice and defaming Plaintiff; Plaintiff has suffered permanent damage to her reputation and good standing amongst her peers and irreparable harm and  sustained injuries financial loss  and damages  in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

**257.**                              **COUNT  XII**

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

**VIOLATION OF 42 U.S. CODE § 1986 - ACTION FOR NEGLECT TO PREVENT**

Defendants by neglecting to acknowledge that the Plaintiff was being lied against and harmed by St. Barnabas Hospital and also the City of Englewood in RICO conspiracy, Defendants joined in the RICO conspiracy.  Defendants neglected to remedy the situation thereby causing irreparable harm to the Plaintiff.  As a direct and proximate result of the Defendants' violation of 42 U.S. Code § 1986, the Plaintiff has sustained injuries and damages.

As a direct and proximate result of Defendants' unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights and defaming Plaintiff  based on false testimony of St. Barnabas staff,   Plaintiff has suffered permanent damage to her reputation and good standing amongst her peers and irreparable harm and  sustained injuries, loss of  revenue  and damages  in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

258.                           **COUNT  XIII**

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.
**VIOLATION OF 42 U.S. CODE § 1983 - CIVIL ACTION FOR DEPRIVATION OF RIGHTS**

Defendants deprived the Plaintiff of her constitutional rights by conspiring with St. Barnabas and  the City of Englewood and Dara Govan of DOJ  to defame and harm her for corrupt political purposes.  The Defendants acted under the color of law in depriving the Plaintiff of her constitutional rights.  As a direct and proximate effect of the Defendants' violation of 42 U.S. Code § 1983, Plaintiff has sustained injuries and damages.

As a direct and proximate result of Defendants' unlawful  actions,  and violation of Plaintiff Dr. Ezekwo's  constitutional rights and defaming Plaintiff;  Plaintiff has suffered permanent damage to her reputation and good standing amongst her peers and irreparable harm and  sustained injuries, loss of revenue and damages  in the amount of  **ONE BILLION US DOLLARS and additional damages to be determined at trial.**

 **WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants providing the following relief:

(a) Compensatory damages in whatever amount in excess of  **ONE BILLION DOLLARS,**  exclusive of costs, and interest, that Plaintiff is found to be entitled.

(b) Punitive / exemplary damages against Defendants in whatever amount exclusive of costs and interest that Plaintiff is found to be entitled

(c) An order placing Plaintiff in the position that she would have been in had there been no violation of her rights;  restoring her professional  ownership and title  and removing all false information they placed on Plaintiff's record forthwith until the case is concluded  and allowing her the ability to practice medicine where and how she chose without monitoring her and forcing her to self report which is not done to other innocent physicians like her.

(d) An order enjoining/ restraining Defendants from further acts of discrimination or retaliation;

(e) Compelling Defendants to vacate and remove all the false information has on her database and allow the hearing and evidence from Plaintiff and her attorney on the record and clear her name. Plaintiff's name and reputation to be restored and those guilty of this falsehood held accountable

47

(f) An award of interest, costs and reasonable attorney's fees.

(g) Any and all remedies provided pursuant to Federal and state statute and regulations on Plaintiff's profession  and ADA statues.

(h) Take other appropriate nondiscriminatory measures to overcome the above discrimination and lawlessness of the Defendants

Such other and further relief as the court deems appropriate.

Respectfully Submitted;          August 29th 2022.

"/s/ *IfeomaEzekwo*"

Ifeoma Ezekwo, Plaintiff.

400 Tenafly Road #1002, Tenafly, NJ 07670 (201) 674 9548    avitacares@yahoo.com

**Authority and Case List**

1. The Eighth Amendment of U.S. Constitution

2. 42 U.S. Code § 1983

3. 42 U.S. Code § 1985

4. 42 U.S. Code § 1986

5. Hines v. Gomez, 108 F.3d 265 (1997)

6. The First Amendment of U.S. Constitution

7. Perry v. Sindermann, 408 U.S. 593, 597-98, 92 S.Ct. 2694, 2697-98, 33 L.Ed.2d 570 (1972)

8. Barnett v. Centoni, 31 F.3d 813 (1994)

9. Fed.R.Civ.P. 56(c).

10. Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir.1990).

11. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987)

12. Thompson v. Enomoto, No. C-79-1630-SAW (N.D.Cal. Oct. 23, 1980)

13. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985)

14. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989)

15. Buckey v. Los Angeles, 957 F.2d 652, 654 (9th Cir.1992)

16. Galbraith v. County of Santa Clara, 307 F.3d 1119 (2002)

17. Branch I, 937 F.2d at 1387-88

18. Butler v. Elle, 281 F.3d 1014, 1024-25 (9th Cir.2002)

19. Liston v. County of Riverside, 120 F.3d 965, 972-975 (9th Cir.1997)

20. Hervey v. Estes, 65 F.3d 784, 790 (9th Cir.1995)

21. Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir.1998)

22. The Fourth Amendment of U.S. Constitution

23. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988)

24. Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir.1986)

25. Buckley v. Fitzsimmons, 509 U.S. 259 (1993)

26. Tower v. Glover, 467 U. S. 914, 922-923 (1984).

27. Forrester v. White, 484 U. S. 219, 224 (1988)."

28. Imbler v. Pachtman, 424 U. S. 409 (1976)

49

29. Hampton v. Chicago, 484 F. 2d 602, 608 (CA7 1973), cert. denied, 415 U. S. 917 (1974)

30. Burns v. Reed, 500 U. S. 478, 495 (1991)

31. Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum. L. Rev. 463, 489 (1909)

32. Viosca v. Landfried, 140 La. 610, 615, 73 So. 698, 700 (1916)

33. Youmans v. Smith, 153 N. Y. 214, 220-223, 47 N. E. 265, 267-268 (1897)

34. G. Bower, Law of Actionable Defamation 103, n. h, 104-105 (1908)

35. Board of Regents of California v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)

36. Owens v. Rush, 654 F.2d 1370 (10th Cir.1981)

37. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)

38. United Transportation Union v. Michigan Bar, 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971)

39. Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972)

40. Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984)

41. Williams v Williams, 23 N.Y.2d 592, 596

42. Dean v Kochendorfer, 237 N.Y. 384, 390; Miller v Stern, 262 App Div 5, 8

43. Advance Music Corp. v American Tobacco Co., 296 N.Y. 79

44. American Guild of Musical Artists v Petrillo, 286 N.Y. 226

45. Opera on Tour v Weber, 285 N.Y. 348, cert den 314 US 615)

46. Burns Jackson Miller Summit & Spitzer v Lindner, 59 N.Y.2d 314, 332;

47. ATI, Inc. v Ruder & Finn, 42 N.Y.2d 454, 458

48. Cook v. Sheldon 41 F.3d 73 (1994)

49. Jeffries v. Harleston, 21 F.3d 1238, 1248 (2d Cir.), vacated on other grounds and remanded, ___ U.S. ___, 115 S.Ct. 502, ___ L.Ed.2d ___ (1994)

50. Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir.1993)

51. Golino v. City of New Haven, 950 F.2d 864, 868 (2d Cir.1991),

52. Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 39 (2d Cir.1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986).

53. Martin v. City of Albany, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306-07 (1977)

54. Carl v. Ayers, 53 N.Y. 14, 17 (1873)

55. Loeb v. Teitelbaum, 77 A.D.2d 92, 100-01, 432 N.Y.S.2d 487, 493-94 (1980)

56. Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03, 406 N.Y.S.2d 443, 444-45, 377 N.E.2d 975, 976-77 (1978)

57. Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir.1992)

58. Magnotti v. Kuntz, 918 F.2d 364, 367-68 (2d Cir.1990)

59. Wilson v. Garcia, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985)

60. Curiano v. Suozzi, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984);

61. Board of Educ. of Farmingdale v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 642, 343 N.E.2d 278, 282 (1975)

62. Mormon v. Baran, 35 N.Y.S.2d 906, 909 (Sup.Ct.1942)

63. Torres v. Superintendent of Police, 893 F.2d 404, 410 (1st Cir.1990)

64. Williams v. Williams, 23 N.Y.2d 592 (1969)

65. Matter of Meyer, 209 N.Y. 386

66. Holy Trinity Church v. United States, 143 U. S. 457

67. Booth v. Curtis Pub. Co., 15 A D 2d 343, affd. 11 N Y 2d 907

68. Crawford, The Construction of Statutes, § 177 [1940]

69. Rosenblatt v. Baer, 383 U. S. 75, 86.

70. Monell v New York City Dept. of Social Services, 436 US 658 (1978)

71. Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 279 (1977)

72. The Racketeer Influenced and Corrupt Organizations Act (RICO)

73. 18 U.S.C. §1503

74. 18 U.S.C. §1505

75. 18 U.S.C. §1512

76. Aguilar, 515 at 599, 115 S. Ct 2357

77. United States v. Mullins 22 F. 3d 1365, 1370(CA6 1994)

78. United State v. Ryan 455 F. 2d 728, 734 (CA9 1972)

79. Pettibone v. United States, 148 U.S. 197 (1893)

80. United States v. Thomas, 916 F2.d 647(11 Cir 1990)

81. In United States v. Brand, 775 F.2d 1460(11 Cir. 1985)

82. Cole v. United States, 329 F.2d 437, 439 (9th Cir.)

83. United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65L.Ed. 553(1921)

84. United States v. Griffin, 589. F.2d 200, 204 (5th Cir)

85. 18 U.S. Code §35

86. 42 U.S. Code § 3617

87. 42 U.S. Code § 12203

88. United States v. Navarro, 608 F. 3d 529 (9th Cir 2010)

89. Frasher v. State, 260 A. 2d 656 (Md. Ct. Spec. App. 1970)

90. People v. Petznick, 114 Cal. App. 4th 663(2003)

91. State v. Matson, 921 P. 2d 790 (Kan. 1996)

92. United States v. Blanco, 754 F. 2d 790 940 (11th Cir. 1985).

93. Ruffin v. State, 992 So.2d 1165 (Miss. 2008).

94. State v. Gay, 434 S.E. 2d 840 (N.C. 1993) United States v. Blanco, supra.

95. NJ Rev Stat 2C:13-5(2013)

96. Mollen Commission( New York 1994)

97. Brady v. Maryland, 373 U.S. 83 (1963)

98. www.ProPublica.org report-The NYPD Files

99. Russello v. United States, 464 U.S. 16, 26-27, 104 S. Ct 296, 302-303 78 L. Ed 2d 17(1983);

100.    United States v. Turkette, 452 U.S. 576, 589, 101 S S. Ct 2524, 2532, 69 L. Ed. 2d 246 (1981).

101.    By Sedima, S.P.R.L. v Imrex Co., 473 U.S. 479, 496, 105 S. Ct 3275, 3285, 87 L. Ed 2d 346 (1985),

102.    United States v. Phillips 664 F. 2d 971, 1011(5th Cir. Unit B Dec. 1981)cert. denied, 457 U.S. 1136, 102 S. Ct 1265 73 L. Ed. 2d 1354 (1982)

103.    18 U.S.C.A. 1961(4) (West 1984)

104.    United States v. Delano , 825 F. Supp. 534, 538-39(W.D.N.Y. 1993),aff'd in part, 55 F. 3d 720(2d Cir.1995)

105.    H.J. Inc., v. Northwestern Bell Tel. Co. 492 U.S.  229, 239, 109 S.Ct 2893, 2900, 106 L. Ed. 2d 195 (1989)

106.    Ticor Title Ins. Co. v. Florida, 937 F. 2d 447, 450(9th Cir. 1991)

107.    United States v. Indelicato 865, 865 F. 2d 1370, 1382(2d Cir.), cert denied, 493 U.S. 811, 110 S. Ct. 56, 107 L.Ed. 2d 24 (1989)

108.    United States v. Rastelli 870 F. 2d 822, 828 (2d Cir.), cert. denied, 493 U.S. 982, 110 S. Ct. 515, 107 L. Ed. 2d 516 (1989).

109.    United States v. Cauble, 706 F. 2d 1322, 1341-42 (5th Cir. 1983), cert. denied, 465 U.S. 1005, 104 S. Ct. 996, 79 L. Ed. 2d 229 (1984)

110.    United States v Daly, 842 F. 2d 1380, 1389-92 (2d Cir.

111.    Petro-Tech, Inc. v Western Co. of North America, 824 F.2d 1349, 1356 (3d Cir. 1987).

112.    United States v. Local 560 of International Brotherhood of Teamsters, 780 F. 2d 267, 288-89 and n. 25 (3d Cir. 1985).

113.    Kamerling v. Massanari 295 F.3d 206, 214 (2d Cir. 2002)

114.    Prairie Band of *1259 Potawatomi Indians 253 F.3d at 1250. (10th Cir. 2001)

115.    Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001)

116.    Tri-State Generation & Transmission Assoc., Inc v. Shoshone River Power, Inc., 874 F.2d 1346, 1354 (10th Cir. 1989)

117.    RJR-MacDonald, at p.341;

118.    Christian Philip v. Rajalingam, 2020 ONSC 1925, at para.33.

119.    Amphenol Canada Corp v. Sundaram, 2020 ONSC 328(Div. Ct.) at paras 37-39

120.    2092280 Ontario Inc v. Voralto Group Inc., 2018 ONSC 2305 (CanLII)

121.    Restatement (2nd) of Torts, §559.

122.    Restatement (2nd) of Torts, §559, comment e.

123.    Restatement (2nd) of Torts, §558.

124.    See Simpson v. Mars, Inc., 929 P.2d 966 (Nev. 1997).

125.    See Barnes v. Clayton House Motel, 435 S.W.2d 616 (Tex. 1968)

126.    See Jackson v. Longcope, 476 N.E.2d 617 (Mass. 1885).

127.    Romain v. Kallinger, 537 A.2d 284 (N.J. 1988).

128.    Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122 (1st Cir. 1997)

129.    The New York Times Co. v. Sullivan, 376 U.S. 254 (1964)

130.    Kilgore v. Younger, 30 Cal.3d 770 (1982

131.    Weenig v. Wood, 349 N.E.2d 235 (Ind. 1976).

132.    The First Amendment.

133.    Von Kettler et.al. v. Johnson, 57 Ill. 109 (1870).

134.    The People v. Brewer, 128 Ill. 472, 483 (1928).

135.    The U.S. Supreme Court, in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974)

136.    Rogers v. Barbera (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162

137.    Crawford v. Euclid Natl. Bank (1985), 19 Ohio St.3d 135, 139, 19 OBR 341, 344, 483 N.E.2d 1168, 1171

138.    Clermont Environmental Reclamation Co. v. Hancock (1984), 16 Ohio App.3d 9, 16 OBR 9, 474 N.E.2d 357

139.    Avco Delta Corp. v. Walker (1969), 22 Ohio App.2d 61, 51 O.O.2d 122, 258 N.E.2d 254

140.    Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A 68 Ohio St. 3d 294 (Ohio 1994)

141.    Dutt v Kremp 894 P.2d 354 (Nev. 1995)

142.    Bradshaw v. State Farm Mut. Auto. Ins., 157 Ariz. 411, 758 P.2d 1313 (1988)

143.    Haswell v. Liberty Mutual Insurance Co., 557 S.W.2d 628, 633 (Mo. 1977)

144.    Restatement (Second) of Torts § 675 cmt. c (1977)

145.    Prosser & Keeton on the Law of Torts § 120, at 893 (5th ed. 1984)

146.    Bull v. McCuskey, 96 Nev. 706, 615 P.2d 957 (1980).

147.    Chapman v. City of Reno, 85 Nev. 365, 369, 455 P.2d 618, 620 (1969)

148.    Laxalt v. McClatchy, 622 F. Supp. 737, 751 (D. Nev. 1985)

149.    Kovacs v. Acosta, 106 Nev. 57, 59, 787 P.2d 368, 369 (1990)

150.    Violation of America's Disability Act

## APPENDIX ADDENDUM 1

**Appendix 2: Attorney Mr. Porter Letter to Nemerson about Injustice of OPMC against Dr. Ezekwo.**

July 25, 2017

Roy Nemerson, Esq.
New York State Department of Health
90 Church Street – 4th Floor
New York, New York

Re:  **In the Matter of Ifeoma Ezekwo, M.D.**

Dear Mr. Nemerson:

The above entitled mater has been formally addressed on two separate occasions by the New York State Department of Health.  On December 27, 2013 Determination and Order BPMC #13-429 was issued resulting in a two-year stayed suspension of license.  Thereafter, on April 2, 2014, the Administrative Review Board ("ARB") affirmed the decision of the Hearing Committee.

At the time of these two regulatory determinations Dr. Ezekwo was suffering from the recent aftermath of a stroke, **and major spinal surgery** which prevented her from participating directly in these proceedings.  Despite several attempts to adjourn these proceedings, the Department insisted on going forward despite the fact that Dr. Ezekwo was out sick and thus was not actively practicing and was unable at the time to operate her solo Ophthalmology practice, and/or participate meaningfully in the Hearing process.

The focus of the hearing involved a number of questions about credentialing issues. In fact it was obvious from the facts that St. Barnabas without legal justification falsely accused Dr. Ezekwo in all the complaints they presented to OPMC about her even though her past clinical experience was clearly and truthfully answered in the application form and the supporting documents Dr. Ezekwo submitted with her admitting privileges application.  At the time of these events, it should be noted that Dr. Ezekwo was spoken to in an incourteous manner by the Director of Medical Staff privileges at St. Barnabas who abruptly told her that she could not operate on approximately ten patients whom she had already booked in the hospital after the Ophthalmology Director at St. Barnabas had already granted Dr. Ezekwo temporary privileges. This conversation with the Director of Medical Staff privileges occurred while Dr. Ezekwo was waiting for her previously scheduled credentialing meeting.

Additionally, the Director of Medical Staff Affairs demonstrated bias to Dr. Ezekwo, and told her that she read on the internet that Dr. Ezekwo had sued Montefiore before and that St. Barnabas Hospital was then presently seeking affiliation with Montefiore Hospital so therefore,

55

for political reasons, she would not allow Dr. Ezekwo to have privileges at St. Barnabas and that she would do everything in her power to stop Dr. Ezekwo from getting admitting privileges at St. Barnabas and "will destroy Dr. Ezekwo" if she tried.  This is clearly the language of bias and inappropriate credentialing practices.  Dr. Ezekwo therefore proceeded with her application after making arrangements for her patients to be cared for through an Ambulatory Surgery Center ("ASC") in the Bronx.

When Dr. Ezekwo was completing the application, the instruction said specifically to disclose events in the past ten years.  This was her clear understanding at the time she initially completed her application to St. Barnabas.  Further, based on prior applications that Dr. Ezekwo has done in the past in similar situations, she understood the application for credentials to St. Barnabas to only apply to events which had occurred within the last ten years.  After Dr. Ezekwo sent in the completed application, the Medical Staff Office secretary who was reviewing the application for completion before submitting it to the Credentials Committee for review called Dr. Ezekwo about the incomplete entry knowing full well that Dr. Ezekwo had already discussed openly the issue with Montefiore with St. Barnabas even before the application went in.  Dr. Ezekwo answered her immediately telling her that the instructions said ten years, and the issue with Montefiore was longer than that, fifteen years to be exact. Dr. Ezekwo then followed this with a fax documenting the same sentiment and explanation.  The Medical Staff Office, upon receiving Dr. Ezekwo's Fax confirmed that the file was complete, that they were satisfied with her answers, and all her documents were complete and truthful and accurate.  She was then scheduled her for interview with the Credentialing Staff.  When Dr. Ezekwo arrived at St. Barnabas hospital for her admitting privileges interview, and while she was waiting for her turn in the lobby to be called, Dr. Ezekwo was again confronted by this same lady, the Director of the Medical Staff Office. She then rudely confronted Dr. Ezekwo by asking her what she was doing there. Dr. Ezekwo politely answered that she was there for her interview which had been previously scheduled. She told Dr. Ezekwo that she was wasting her time because it would be over that Director of Medical Staff's "dead body" that Dr. Ezekwo would ever get admitting privileges at St. Barnabas. This was a second inappropriate comment by the Director of the Medical Staff Office.  Dr. Ezekwo did the interview anyway since she was at the hospital already and the Credentialing Team again went over all her qualifications and trainings with her and all the years of practice. Dr. Ezekwo felt strongly that the Director of Medical Staff would not allow privileges to be granted her as she had clearly told her so.

Dr. Ezekwo did not attend the Due Process Hearing on Medical Staff privileges at St. Barnabas viewing it as exercise in futility and at that time also had to care for her own health which was of utmost importance to her.  The OPMC Hearing Committee did find that Dr. Ezekwo was aware of a Montefiore denial of privileges as of October 12, 1995, but this was approximately fifteen (15) years prior to her application for privileges as a staff physician at St. Barnabas.  Consistent with her (emphasis added) understanding of the St. Barnabas ten year requirements, she has enumerated above what actually happened to her throughout that application process which she was not present to explain during the hearings due to illness. Under no circumstances did she meet the criteria of Matter of Breslin vs. Commissioner of Education, 116 A.D.2d 357, 501 N.Y.S.2d 923 (3rd Dept. 1986) whereby she made a knowing and deliberate misrepresentation.  The Hearing Committee voted 2 to 1 against her on this isolated charge, and had she been physically able to participate, she undoubtedly would have

convinced all three of the voting members of the Hearing Committee of the correctness of her position.

Dr. Ezekwo seeks a complete reconsideration and review of this prior determination which was based on false charges brought by St. Barnabas and for this false case to be dismissed in its entirety.  By forcing this case to proceed at a time when health considerations precluded her participation additionally raises questions of whether or not her federal rights were violated under color of state law.  I would welcome the opportunity to sit down and discuss this matter with you, or with whomever in the Department of Health you deem appropriate.  If requested, I would be more than willing to bring in Dr. Ezekwo to better explain all of the surrounding issues that were the subject of the Hearing, and subsequent appeal to the Administrative Review Board ("ARB").

Essentially, Dr. Ezekwo seeks a finding that the present information on the New York State Department of Health website be withdrawn and taken down immediately as it has been adverse to her.  I would much prefer to design an immediate approach whereby intervention by the courts can be obviated as it is very obvious that Dr. Ezekwo was harmed here by these false accusations and the persistence of the false information against her on the website as well as all that she has been put through dealing with the OPMC Staff and their subsequent sharing of this inaccurate Administration Hearing finding with the New Jersey Medical Board.  Her license in New Jersey has therefore been jeopardized and she must have this issue remedied here in New York first, so she can then resolve all New Jersey issues and any other states she might seek to affiliate with.  I believe that if Dr. Ezekwo  is permitted to explain these events in detail, a better and more complete understanding of events could be had.  I look forward to discussing this matter with you further in the very immediate future as an unfair and unjust burden has been placed on Dr.  Ezekwo by an Administration Hearing finding that does not accurately correlate with the facts.  Additionally, consideration should be had towards an inquiry to review why St. Barnabas brought charges against Dr. Ezekwo when they knew the underlying material facts did not justify denying the application for privileges.

I would appreciate a prompt and immediate response, and would welcome the opportunity to discuss this matter further.

Respectfully submitted,

Kevin D. Porter, Esq.

KDP/lo
Cc:  Dr. Ifeoma Ezekwo

**Appendix 3: Letter To Inspector General Leahy**

March 12, 2016

Ifeoma Ezekwo, MD.
400 Tenafly Road, # 1002
Tenafly, NJ 07670.

Honorable Inspector General Catherine Leahy Scott,
Office of New York Inspector General
Empire State Plaza
Agency Building 2, 16th Floor
Albany, N.Y. 12223

Dear Honorable Inspector General Catherine Leahy Scott;

**Re: REQUEST FOR FULL  INVESTIGATION AND PROSECUTION  OF OPMC'S QUESTIONABLE TACTICS AND ABUSE OF POWER AND DISTRIBUTION OF BOTH FALSE AND MISLEADING INFORMATION AGAINST LICENSEE  IFEOMA EZEKWO, MD  LICENSE # 156622**

Please I am forwarding to you in the embodiment of this letter the complaint that I filed with the Commissioner for Health, Howard Zucker, M.D. against OPMC.   Mr. David Epting of OPMC in a letter dated March 4, 2016 has advised that I must file the embodied complaint with you as you are entrusted with the responsibility of investigating complaints concerning OPMC, a New York State Government Agency and its employees.

In that capacity, I humbly request that you please carefully review my complaint, clearly elucidated in the complaint with the New York Health Commissioner, as well as obtain and review all the contents of all the complaints, hearing transcripts and all correspondences to others and all submitted documents in this matter that will definitely show the extremely concerning actions and misconducts by OPMC and its staffers against me. Also important is the set of false and misleading information OPMC  have provided to New Jersey Medical Board that have caused them to withhold the renewal of my New Jersey medical license which is a travesty.

There is a serious and urgent need for total overhaul and full investigation and changes in OPMC methods that may have made it easier for propagators of surreptitious behavior to flourish there. It is also extremely important that safe proof guidelines are put in place after this full investigation to assure that what happened to me will not happen to any other physician in New York State.

I look forward to your cooperation in this matter and a fair and expeditious resolution of my complaint. Please create a new and reformed OPMC that upholds fairness, justice and equal treatment for all and swiftly route out of all surreptitious characters that create near insurmountable obstacles for physicians.

Respectfully yours;


Ifeoma Ezekwo, M.D.

January 31st 2016

Ifeoma Ezekwo, MD.
400 Tenafly Road, # 1002
Tenafly, NJ 07670.

Howard Zucker, M.D.
Commissioner for Health
New York State Department of Health
Empire State Plaza, Corning Tower, 14th Floor
Albany, NY 12237.

Dear Commissioner Howard Zucker, M.D;
**Re: REQUEST FOR FULL INTERNAL INVESTIGATION OF OPMC'S QUESTIONABLE TACTICS AND ABUSE OF POWER AND DISTRIBUTION OF BOTH FALSE AND MISLEADING INFORMATION AGAINST LICENSEE IFEOMA EZEKWO, MD LICENSE # 156622**

This letter serves as a formal request for full internal investigation and an official complaint against OPMC for what I see as blatant abuses of power and deliberate acts of misinformation. OPMC has propagated both false and misleading information against me to others and in particular to New Jersey Medical board. In response to a combination of both blatantly false as well as some misleading information that OPMC either directly and or indirectly made available to New Jersey Medical board, that board has now held up my license renewal without cause except to say they are basing it on the false information that OPMC propagated.  This is from a letter I received from Mr. Charles Rush of New Jersey Medical Board as well as my response and request for renewal (all attached)

While OPMC was exporting the misleading information to New Jersey, at about the same time frame, it started its own request of a patient record without the patient or their counsel's knowledge or consent in a case that is currently under litigation for the past 2 to 4 years telling me in their request it is not about me.  This is from a letter I received from Ms Elizabeth Lynch, RN of OPMC (attached). It was obvious to me from the chain of events that Ms Elizabeth Lynch was carrying on a "phony baloney" investigation and there was no "mystery doctor" here who did anything to this patient 5 years ago that this patient is just now complaining about, especially when the said patient has been in litigation for the past two to four years for outcome of eye surgery performed by Dr. Ogiste, has all the treating doctors records and is well lawyered up. It will be interesting for you to ask Ms Elizabeth Lynch to show you the copy of the actual OPMC complaint filed by this patient and who is the mystery doctor she claims she is investigating and I am sure you will see there is no patient complaint.

OPMC can easily get all the records of all the treating physicians of this patient from the court and be transparent as the patient was suing for eye surgery done by Dr. Ogiste and last care of this patient was over five years ago. This patient never complained about any abuse or misconduct towards her by any of the other treating physicians nor my office during services to her more than five years ago.  It is referred to counsel. While OPMC can get records without consent, certain circumstances like in this case can be prone to abuse of power so it behooves OPMC to be transparent and above bar in its dealings.
(See attached all referenced correspondences)

While it is laudable to believe that OPMC is charged with the duty to assure that physicians behave according to rules of conduct, ethics and laws governing the practice of Medicine in the state of New York, my recent experience with them has caused me to question seriously the underpinnings and motives behind some of the "tasks" they chose to undertake. It became obvious to me that OPMC is by their actions to me are condoning "vendetta vending", "hassle factor" and abuses of power as well as intimidation by persistent misinformation.

Why must  OPMC insist on leaving false information  from St. Barnabas  which they have proven to be false  in their own hearings which I could not attend because I was incapacitated at the time due to consequences of both police brutality and misconduct against me and my family and other recovery  I was dealing with at the time?? This is a travesty and has absolutely no place in medical circles.

 I request that you find out who the perpetrators of these heinous acts are and give appropriate disciplinary action as well correct training on proper record keeping of physicians data that is truthful and accurate and does not jeopardize the physician's future dealings with others as well their livelihood. The present wave of actions by OPMC now in collusion with their misinformation to New Jersey board, at the time that my Federal court action against EPD is in full swing, is so uncanny that it is impossible not to think of the connection and what one has to do with the other.

The details of the chain of events with my St. Barnabas hospital application for privileges and their bigotry and bias that then culminated in blatantly false accusations to OPMC which OPMC by the way proved to be false and yet OPMC's subsequent action was arbitrary and capricious and did not consider the preponderance of evidence provided and OPMC did not follow its own guidelines are in the archive files at OPMC. Also OPMC did not do their due diligence before bringing action even when all facts proved that St. Barnabas hospital lied and lied and lied.  It will take a mile long letter to go into that here but you can use your good offices to access the whole file at OPMC if you desire and look at it. It is also not the purpose of my letter, as that concluding action on my part will be continued by my counsel against OPMC so it is a legality that stands by itself and I believe in my victory even if it is long in coming.

For OPMC to relegate me to ignominy because they want to is not the purpose of OPMC.
OPMC cannot continue to propagate an argument and set of facts which it has proven to be false and hold a physician like myself bound to that travesty.

 Now  for the present OPMC "phony baloney" investigation of a "mystery doctor"; five years ago when I took care of this patient, there was absolutely no sexual, physical or any other form of misconduct against this patient by any of the treating physicians that I know of. It was never the issue. The patient sued for her unexpected outcome of the eye surgery she received from Dr. Ogiste, period, nothing more or less. The case will either be settled or go to trial. OPMC said that this patient did not complain about me. So following this line of argument and history,   OPMC wanting my records for their "investigation" of their "mystery doctor" becomes an extremely circumspect abuse of power of an innocent doctor like me who they are just abusing for vendetta vending culture that has pervaded their office.  Will the mystery doctor they claim to be investigating call me to listen in and document on my own record whilst he or she is either sexually, physically or otherwise abusing my patient an adult? That will be an absurd thought on the part of OPMC. By OPMC  " creating" questionable investigations in order to witch hunt and vendetta vend against me, they are exhibiting a highly irresponsible and wasteful behavior on the resources of the state as well as stretching the resources of insurers  who will spend time and financial and legal resources to defend a phony case.

Let OPMC give you the name of the mystery doctor they claim to be investigating  and what they claim he or she did and see how that justifies their harassing me. Or are they doing "fake" to just hassle me??? Also OPMC being fully aware that there is an ongoing litigation on this case for the past 2 to 4 years could have easily and transparently gone to the judge in charge of the case and gotten all the copies of records of all treating physicians including mine and review them all and thus all concerned are aware of what is going on and I am not isolated and targeted unjustly for OPMC abuse of power.

By vilifying me further through "gossip" and "guesstimations", OPMC is hoping that no-one will question their horrific behavior and their gross wicked injustice and bigotry of giving false information about me to other state boards and their refusal to correct their false information, remove it from the records and sent correcting letters to NJ Medical Board and others as well as send an apology to me and make sure that I ascertain they have corrected their deliberate misinformation. They have my phone number and address and yet they have not called or written me since they got my letter. In fact Mr. Bill Fidell of OPMC is making what I term "hissing snake" phone calls telling people he is "looking for me" in an attempt to intimidate me after OPMC has been deliberately distributing false information about me. What I said then and what I say now is that Mr. Fidell knows my phone number and address and if he has any questions whatsoever with the letters I wrote or anything, he can call me or write me or respond to the letter. There was no need for any intimidating behavior.

So, OPMC is bubbling the water here by a set of dirty tricks and wasting both the tax payer money and my money for my defense over nothing, or is it  just so they can create a veritable sham side show and impression and harassment  of me whilst my federal  case with EPD is going on, being another enforcement agency as in " enforcement units unite and suppress and oppress her"; as in keep her in " perpetual legal rigmarole" These are just a tip of the iceberg of what you need to be investigating  OPMC about in order to understand some of the horrific and horrendous acts  you may uncover.

In fact the "OPMC Emperor " is naked and walking around and yet no one may be saying anything about their injustices for fear  they will be  targeted. Also OPMC is suffering from a syndrome I term the "Oklahoma cop syndrome" whereby they feel that just because they have a sham yet to be resolved case with me gives them the permission to abuse and violate me and do anything they want with my records and my name and share false information about me to others and other state boards and believe that I will keep silent. Unfortunately, OPMC is violating Federal law and must be held accountable and I will not keep silent when it is obvious they are abusing me and spreading false information about me. If you ask around secretly about OPMC, you may be shocked about some things you will uncover.

While it is embarrassing and humiliating to be writing and saying these things about one's own dear profession and affiliation, I cannot help it in this instance because someone said that "for evil to flourish it is so necessary for good people to do nothing"

I am a good person and an excellent physician and I must do something to make sure that these ills that is now pervading OPMC is immediately remedied and that no physician in New York State is made to go through what I am going through and have gone through at the hands of incredibly horrific OPMC. What happened to me was an indignity that should not be suffered by any physician and must not be condoned by the good people of New York State.

Kindly let me know immediately how you are going to be handling this matter and what steps you will be taking to clean up OPMC and route out surreptitious characters there that are involved in all sorts of vendetta vending, discrimination, false recordings and other forms of abuse as well as OPMC hearings that rule arbitrarily and capriciously without regard to the preponderance of evidence.

 OPMC can no longer exist in its present format without oversight and cannot be allowed to abuse the very physicians they are required to regulate. OPMC cannot be allowed to be violating Federal laws on accurate reporting. OPMC is not above the law and must abide by all the laws and not abuse power.

Please if for any reason you cannot initiate the sort of reformation that is overdue for OPMC, you must let me know immediately so I can bring the matter up to the state senators and other law makers and the NYS Governor Cuomo as this matter is so important that it can no longer be swept under the rug.

Doctors need to call for OPMC acts of leaving false information on a doctor's file as offensive and illegal and misconduct on the part of the OPMC staff that perpetuated such offence.

If this is not an isolated incident, then a full overhaul of OPMC is in order as well as retraining  for them to know they must follow the law at all times and cannot be involved with vendetta vending and witch hunting and then leaving information which they have verified to be false to be lingering in a physician's file. Also OPMC cannot practice "game fixing" whereby they determine how they will rule on a case because of some behind the scenes shenanigans and then ignore preponderance of evidence in ruling on the case. Then to make matters worse, they leave all those facts they have been shown to be false in the file to further victimize the physician and intimidate and deprive the physician of livelihood and opportunities. This is what OPMC did to me and this is what OPMC must be made to know is illegal and that they cannot do that to any other physician in New York State. OPMC actions put the careers of physicians at completely unnecessary risk. OPMC has the power to hurt and cause a huge distraction and cause harm to physicians during critical phases of their career and thus cannot be allowed to abuse that power.

I repeat my call to the Government to classify such OPMC actions as "offensive weapons" which would thus give the physician and their legal representatives   more power to prosecute the involved OPMC staffers immediately and force them to obey the law as they have no good reason to hurt physicians. My incident with OPMC shows why this is becoming more and more urgent.
The Government must now begin hunting for the OPMC suspects who are involved in any form of illegal and power abuses against physicians in general and me in particular.

In conclusion, I request the following:

1.  Review and correction of OPMC policy to make sure they must provide accurate information concerning me and other physicians at all times.

2.  OPMC must remove all its false information immediately from my files.  OPMC must through your office, show   my counsel and me to approve the accuracy of any information before it is published by them.  In the interim, OPMC must remove the false and misleading information they have about me from view, until such a time when the proper and truthful information confirmed by me and counsel is concluded.

3. OPMC must immediately write to New Jersey Medical board to rescind the false information it provided them. Since the case will still be ongoing to final conclusion, they must advise New Jersey Medical Board of their apparent mistakes and the weakness and bogus nature of their case and ask that board treat me normally while they await my victory in the matter.  This is an urgent matter and OPMC must provide this to NJ Medical board immediately.

4. A letter from OPMC to me acknowledging the wrongful information it put out against me and a promise and apology to immediately correct it.

5. An oversight committee comprising of all physicians including those who are neutral and those who have been rightfully treated as well as those wrongfully treated by OPMC processes and ask them to review OPMC activities and cases going back for the last ten years to detect patterns and practice that are oppressive, abusive, biased, derogatory or downright discriminatory and have them issue recommendations about corrections which I am sure are overdue. Physicians can volunteer  services in that regard, please let me know when this is organized and what times the overviews will take place so that what I sense is going on at OPMC is fully corrected and transparency maintained. It may be prudent to keep the oversight physicians anonymous so they will be protected from any form of vendetta vending.  A department like OPMC is required to be so above board and fair in all their actions that the mere fact that I feel obligated to write this heartfelt letter means that they have failed in a very critical aspect of their mission to the people of New York and physicians of New York.

6. As much as possible identify those at OPMC that are "dirty rotten bad apples" and either retrain them or transfer them to other departments so doctors are not abused or maltreated or have false information about them splashed on the web and distributed to others as well as be wrongfully accused and dragged around by vendetta vendors over a case that should have been dismissed at screening as I have been made to suffer for the past few years.

7. Regular periodic review of all OPMC cases and questionnaires to all participants to assure intrinsic fairness of all proceedings.

I thank you in anticipation of your corporation and resolution of this very urgent matter.


Respectfully yours;



Ifeoma Ezekwo, M.D.

**Appendix 4:  Response from NYS Inspector General**



**STATE OF NEW YORK**
**OFFICE OF THE INSPECTOR GENERAL**
**OFFICE OF THE WELFARE INSPECTOR GENERAL**
**OFFICE OF THE WORKERS' COMPENSATION FRAUD INSPECTOR GENERAL**

**EMPIRE STATE PLAZA**
**AGENCY BLDG. 2, 16TH FLOOR**
**ALBANY, NEW YORK 12223**

**61 BROADWAY, SUITE 2100**              **(518) 474-1010**                          **65 COURT STREET, 5TH FLOOR**
**NEW YORK, NEW YORK 10006**                                                          **BUFFALO, NEW YORK 14202**
**(212) 635-3150**                                                                            **(716) 847-7118**

**CATHERINE LEAHY SCOTT**
**INSPECTOR GENERAL**

May 25, 2016

*Via Email*
iezekwo@hotmail.com

NYSIG #0830-012-2016

Dear Dr. Ezekwo:

   The Office of the New York State Inspector General received your complaint regarding New York State Department of Health, Office of Professional Medical Conduct.

   After carefully reviewing the information provided, our office has referred this matter to executive management at the New York State Department of Health, Office of Professional Medical Conduct.  Any further information should be sent to the NYS Dept. of Health Office of Professional Medical Conduct, located at Riverview Center 150 Broadway Suite 355, Albany, New York 12204.  The Inspector General will not commence an investigation at this time.

   Thank you for contacting the Office of the New York State Inspector General.

                                        Very truly yours,

                                        Leslie M. Arp
                                        Deputy Chief & Confidential
                                 Investigator
                                        Case Management Unit

LMA/hm

64

### APPENDIX 5: Governor Cuomo Petition

March 9, 2016

Ifeoma Ezekwo, MD.
400 Tenafly Road, # 1002
Tenafly, NJ 07670.

The Honorable Andrew M. Cuomo
Governor of New York State
New York State Capitol Building
Albany, NY 12224

Dear Honorable Governor Andrew M. Cuomo;

**Re: PETITION  REQUEST FOR FULL INTERNAL INVESTIGATION OF OPMC'S  DOH QUESTIONABLE TACTICS AND ABUSE OF POWER AND DISTRIBUTION OF BOTH FALSE AND MISLEADING INFORMATION AGAINST LICENSEE  IFEOMA EZEKWO, MD  LICENSE # 156622 AND A CALL FOR TOTAL OVERHAUL OF OPMC ACTIVITIES AND CREATION OF PERMANENT OVERSIGHT OF ALL OPMC'S ACTIVITIES.**

This letter serves as a formal petition to you to compel a full internal investigation and an official complaint against OPMC for what I see as blatant abuses of power and deliberate acts of misinformation as well as their refusal to rescind false and misleading information against me they have propagated to others and other state medical boards and other horrendous acts against me which are against the law.

It is also a formal request for total and complete over haul of OPMC  and creation of an oversight committee against OPMC as well as review of OPMC activities for the past ten years. This is to detect patterns and practice that are oppressive, abusive, biased, derogatory or downright discriminatory and have them issue recommendations about corrections that will compel OPMC to act according to law at all times and route out surreptitious characters that have  pervaded its rank and file and that are  carrying out activities that are highly circumspect.

Please I have enclosed here for your review, my letter to NYS commissioner for health and others at OPMC and NJ Medical board. Your staff that you will assign to the matter will see exactly what is going on at OPMC and issues of concern. I will also request that your staff obtain through FOIL the details of my case with OPMC  to ascertain what pattern of game fixing there is for you to see and OPMC still leaving information it has proven to be false in my files and still propagating those same false information to others to hurt me and now carrying out a "fake mystery doctor" investigation which they say is not about me but demanding my records so they can further harass me and force me to be spending money defending myself over fake investigations.

What is going on at OPMC and its discriminatory, oppressive, capricious and arbitrary actions have no place in New York state in 2016 and I request that you carefully and thoroughly investigate this matter to assure that I no longer suffer at the hands of OPMC and that no other physician in New York state will be put through what OPMC did to me and is continuing to do to me. I cannot be silent when horrendous and surreptitious actions are propagated by the same people who are charged with oversight of

physicians are abusing their power and oppressing and suppressing me and nobody in the state is doing anything about it. It cannot be business as usual; OPMC must be compelled by you to stop their actions that are both against state and federal law.

Please I am enclosing all the relevant documentation here which will enable you look carefully into this matter as well as see the horrific effects of OPMC's actions and see why it is so necessary to create an oversight for all OPMC' s activities as well as review their patterns of practice.

I look forward to your review of this petition and your response. Thank you.

Respectfully yours;


Ifeoma Ezekwo, M.D.

**APPENDIX 6: NYS Commisioner Letter:**

March 12, 2016

Ifeoma Ezekwo, MD.
400 Tenafly Road, # 1002
Tenafly, NJ 07670.

Honorable Inspector General Catherine Leahy Scott,
Office of New York Inspector General
Empire State Plaza
Agency Building 2, 16th Floor
Albany, N.Y. 12223

Dear Honorable Inspector General Catherine Leahy Scott;

**Re: REQUEST FOR FULL INTERNAL INVESTIGATION OF OPMC'S QUESTIONABLE TACTICS AND ABUSE OF POWER AND DISTRIBUTION OF BOTH FALSE AND MISLEADING INFORMATION AGAINST LICENSEE IFEOMA EZEKWO, MD  LICENSE # 156622**

Please I am forwarding to you in the embodiment of this letter the similarly titled complaint that I filed with the Commissioner for Health, Howard Zucker, M.D. against OPMC at the behest of Mr. David Epting of OPMC. Mr. Epting in his letter of March 4, 2016(attached) has advised that I must file the embodied complaint with you as you are entrusted with the responsibility of investigating complaints concerning a New York

January 31st 2016

Ifeoma Ezekwo, MD.
400 Tenafly Road, # 1002
Tenafly, NJ 07670.

Howard Zucker, M.D.
Commissioner for Health
New York State Department of Health
Empire State Plaza, Corning Tower, 14th Floor
Albany, NY 12237.

Dear Commissioner Howard Zucker, M.D;
**Re: REQUEST FOR FULL INTERNAL INVESTIGATION OF OPMC'S QUESTIONABLE TACTICS AND ABUSE OF POWER AND DISTRIBUTION OF BOTH FALSE AND MISLEADING INFORMATION AGAINST LICENSEE IFEOMA EZEKWO, MD  LICENSE # 156622**

67

This letter serves as a formal request for full internal investigation and an official complaint against OPMC for what I see as blatant abuses of power and deliberate acts of misinformation. OPMC has propagated both false and misleading information against me to others and in particular to New Jersey Medical board. In response to a combination of both blatantly false as well as some misleading information that OPMC either directly and or indirectly made available to New Jersey Medical board, that board has now held up my license renewal without cause except to say they are basing it on the false information that OPMC propagated. This is from a letter I received from Mr. Charles Rush of New Jersey Medical Board as well as my response and request for renewal (all attached)

While OPMC was exporting the misleading information to New Jersey, at about the same time frame, it started its own request of a patient record without the patient or their counsel's knowledge or consent in a case that is currently under litigation for the past 2 to 4 years telling me in their request it is not about me. This is from a letter I received from Ms Elizabeth Lynch, RN of OPMC (attached). It was obvious to me from the chain of events that Ms Elizabeth Lynch was carrying on a "phony baloney" investigation and there was no "mystery doctor" here who did anything to this patient 5 years ago that this patient is just now complaining about, especially when the said patient has been in litigation for the past two to four years for outcome of eye surgery performed by Dr. Ogiste, has all the treating doctors records and is well lawyered up. It will be interesting for you to ask Ms Elizabeth Lynch to show you the copy of the actual OPMC complaint filed by this patient and who is the mystery doctor she claims she is investigating and I am sure you will see there is no patient complaint.

OPMC can easily get all the records of all the treating physicians of this patient from the court and be transparent as the patient was suing for eye surgery done by Dr. Ogiste and last care of this patient was over five years ago. This patient never complained about any abuse or misconduct towards her by any of the other treating physicians nor my office during services to her more than five years ago. It is referred to counsel. While OPMC can get records without consent, certain circumstances like in this case can be prone to abuse of power so it behooves OPMC to be transparent and above bar in its dealings.
(See attached all referenced correspondences)


While it is laudable to believe that OPMC is charged with the duty to assure that physicians behave according to rules of conduct, ethics and laws governing the practice of Medicine in the state of New York, my recent experience with them has caused me to question seriously the underpinnings and motives behind some of the "tasks" they chose to undertake. It became obvious to me that OPMC is by their actions to me are condoning "vendetta vending", "hassle factor" and abuses of power as well as intimidation by persistent misinformation.

Why must OPMC insist on leaving false information from St. Barnabas which they have proven to be false in their own hearings which I could not attend because I was incapacitated at the time due to consequences of both police brutality and misconduct against me and my family and other recovery I was dealing with at the time?? This is a travesty and has absolutely no place in medical circles.

68

 I request that you find out who the perpetrators of these heinous acts are and give appropriate disciplinary action as well correct training on proper record keeping of physicians data that is truthful and accurate and does not jeopardize the physician's future dealings with others as well their livelihood. The present wave of actions by OPMC now in collusion with their misinformation to New Jersey board, at the time that my Federal court action against EPD is in full swing, is so uncanny that it is impossible not to think of the connection and what one has to do with the other.

The details of the chain of events with my St. Barnabas hospital application for privileges and their bigotry and bias that then culminated in blatantly false accusations to OPMC which OPMC by the way proved to be false and yet OPMC's subsequent action was arbitrary and capricious and did not consider the preponderance of evidence provided and OPMC did not follow its own guidelines are in the archive files at OPMC. Also OPMC did not do their due diligence before bringing action even when all facts proved that St. Barnabas hospital lied and lied and lied.  It will take a mile long letter to go into that here but you can use your good offices to access the whole file at OPMC if you desire and look at it. It is also not the purpose of my letter, as that concluding action on my part will be continued by my counsel against OPMC so it is a legality that stands by itself and I believe in my victory even if it is long in coming.

For OPMC to relegate me to ignominy because they want to is not the purpose of OPMC. OPMC cannot continue to propagate an argument and set of facts which it has proven to be false and hold a physician like myself bound to that travesty.

 Now  for the present OPMC "phony baloney" investigation of a "mystery doctor"; five years ago when I took care of this patient, there was absolutely no sexual, physical or any other form of misconduct against this patient by any of the treating physicians that I know of. It was never the issue. The patient sued for her unexpected outcome of the eye surgery she received from Dr. Ogiste, period, nothing more or less. The case will either be settled or go to trial. OPMC said that this patient did not complain about me. So following this line of argument and history,   OPMC wanting my records for their "investigation" of their "mystery doctor" becomes an extremely circumspect abuse of power of an innocent doctor like me who they are just abusing for vendetta vending culture that has pervaded their office.  Will the mystery doctor they claim to be investigating call me to listen in and document on my own record whilst he or she is either sexually, physically or otherwise abusing my patient an adult? That will be an absurd thought on the part of OPMC. By OPMC  " creating" questionable investigations in order to witch hunt and vendetta vend against me, they are exhibiting a highly irresponsible and wasteful behavior on the resources of the state as well as stretching the resources of insurers  who will spend time and financial and legal resources to defend a phony case.
Let OPMC give you the name of the mystery doctor they claim to be investigating  and what they claim he or she did and see how that justifies their harassing me. Or are they doing "fake" to just hassle me??? Also OPMC being fully aware that there is an ongoing litigation on this case for the past 2 to 4 years could have easily and transparently gone to the judge in charge of the case and gotten all the copies of records of all treating physicians including mine and review them all and thus all concerned are aware of what is going on and I am not isolated and targeted unjustly for OPMC abuse of power.

By vilifying me further through "gossip" and "guesstimations", OPMC is hoping that no-one will question their horrific behavior and their gross wicked injustice and bigotry of giving false information about me to other state boards and their refusal to correct their false information, remove it from the records and sent correcting letters to NJ Medical Board and others as well as send an apology to me and make sure that I ascertain they have corrected their deliberate misinformation. They have my phone number and address and yet they have not called or written me since they got my letter. In fact Mr. Bill Fidell of OPMC is making what I term "hissing snake" phone calls telling people he is "looking for me" in an attempt to intimidate me after OPMC has been deliberately distributing false information about me. What I said then and what I say now is that Mr. Fidell knows my phone number and address and if he has any questions whatsoever with the letters I wrote or anything, he can call me or write me or respond to the letter. There was no need for any intimidating behavior.

So, OPMC is bubbling the water here by a set of dirty tricks and wasting both the tax payer money and my money for my defense over nothing, or is it just so they can create a veritable sham side show and impression and harassment of me whilst my federal case with EPD is going on, being another enforcement agency as in " enforcement units unite and suppress and oppress her"; as in keep her in " perpetual legal rigmarole" These are just a tip of the iceberg of what you need to be investigating OPMC about in order to understand some of the horrific and horrendous acts you may uncover.

In fact the "OPMC Emperor " is naked and walking around and yet no one may be saying anything about their injustices for fear they will be targeted. Also OPMC is suffering from a syndrome I term the "Oklahoma cop syndrome" whereby they feel that just because they have a sham yet to be resolved case with me gives them the permission to abuse and violate me and do anything they want with my records and my name and share false information about me to others and other state boards and believe that I will keep silent. Unfortunately, OPMC is violating Federal law and must be held accountable and I will not keep silent when it is obvious they are abusing me and spreading false information about me. If you ask around secretly about OPMC, you may be shocked about some things you will uncover.

While it is embarrassing and humiliating to be writing and saying these things about one's own dear profession and affiliation, I cannot help it in this instance because someone said that "for evil to flourish it is so necessary for good people to do nothing"

I am a good person and an excellent physician and I must do something to make sure that these ills that is now pervading OPMC is immediately remedied and that no physician in New York State is made to go through what I am going through and have gone through at the hands of incredibly horrific OPMC.
What happened to me was an indignity that should not be suffered by any physician and must not be condoned by the good people of New York State.
Kindly let me know immediately how you are going to be handling this matter and what steps you will be taking to clean up OPMC and route out surreptitious characters there that are involved in all sorts of vendetta vending, discrimination, false recordings and other forms of abuse as well as OPMC hearings that rule arbitrarily and capriciously without regard to the preponderance of evidence.

OPMC can no longer exist in its present format without oversight and cannot be allowed to abuse the very physicians they are required to regulate. OPMC cannot be allowed to be violating Federal laws on accurate reporting. OPMC is not above the law and must abide by all the laws and not abuse power.

Please if for any reason you cannot initiate the sort of reformation that is overdue for OPMC, you must let me know immediately so I can bring the matter up to the state senators and other law makers and the NYS Governor Cuomo as this matter is so important that it can no longer be swept under the rug.

Doctors need to call for OPMC acts of leaving false information on a doctor's file as offensive and illegal and misconduct on the part of the OPMC staff that perpetuated such offence.

If this is not an isolated incident, then a full overhaul of OPMC is in order as well as retraining for them to know they must follow the law at all times and cannot be involved with vendetta vending and witch hunting and then leaving information which they have verified to be false to be lingering in a physician's  file. Also OPMC cannot practice "game fixing" whereby they determine how they will rule on a case because of some behind the scenes shenanigans and then ignore preponderance of evidence in ruling on the case. Then to make matters worse, they leave all those facts they have been shown to be false in the file to further victimize the physician and intimidate and deprive the physician of livelihood and opportunities. This is what OPMC did to me and this is what OPMC must be made to know is illegal and that they cannot do that to any other physician in New York State. OPMC actions put the careers of physicians at completely unnecessary risk. OPMC has the power to hurt and cause a huge distraction and cause harm to physicians during critical phases of their career and thus cannot be allowed to abuse that power.

I repeat my call to the Government to classify such OPMC actions as "offensive weapons" which would thus give the physician and their legal representatives   more power to prosecute the involved OPMC staffers immediately and force them to obey the law as they have no good reason to hurt physicians.
My incident with OPMC shows why this is becoming more and more urgent.
The Government must now begin hunting for the OPMC suspects who are involved in any form of illegal and power abuses against physicians in general and me in particular.

In conclusion, I request the following:

1. Review and correction of OPMC policy to make sure they must provide accurate information concerning me and other physicians at all times.

2. OPMC must remove all its false information immediately from my files.  OPMC must through your office, show   my counsel and me to approve the accuracy of any information before it is published by them.  In the interim, OPMC must remove the false and misleading information they have about me from view, until such a time when the proper and truthful information confirmed by me and counsel is concluded.

71

3. OPMC must immediately write to New Jersey Medical board to rescind the false information it provided them. Since the case will still be ongoing to final conclusion, they must advise New Jersey Medical Board of their apparent mistakes and the weakness and bogus nature of their case and ask that board treat me normally while they await my victory in the matter.  This is an urgent matter and OPMC must provide this to NJ Medical board immediately.

4. A letter from OPMC to me acknowledging the wrongful information it put out against me and a promise and apology to immediately correct it.

5. An oversight committee comprising of all physicians including those who are neutral and those who have been rightfully treated as well as those wrongfully treated by OPMC processes and ask them to review OPMC activities and cases going back for the last ten years to detect patterns and practice that are oppressive, abusive, biased, derogatory or downright discriminatory and have them issue recommendations about corrections which I am sure are overdue.
Physicians can volunteer  services in that regard, please let me know when this is organized and what times the overviews will take place so that what I sense is going on at OPMC is fully corrected and transparency maintained. It may be prudent to keep the oversight physicians anonymous so they will be protected from any form of vendetta vending.  A department like OPMC is required to be so above board and fair in all their actions that the mere fact that I feel obligated to write this heartfelt letter means that they have failed in a very critical aspect of their mission to the people of New York and physicians of New York.

6. As much as possible identify those at OPMC that are "dirty rotten bad apples" and either retrain them or transfer them to other departments so doctors are not abused or maltreated or have false information about them splashed on the web and distributed to others as well as be wrongfully accused and dragged around by vendetta vendors over a case that should have been dismissed at screening as I have been made to suffer for the past few years.

7. Regular periodic review of all OPMC cases and questionnaires to all participants to assure intrinsic fairness of all proceedings.

I thank you in anticipation of your corporation and resolution of this very urgent matter.


Respectfully yours;


Ifeoma Ezekwo, M.D.

**APPENDIX 7:**    Judge Silebi Removed from Bench

# Passaic County judge removed for abuse of office

**Tom Nobile**

North Jersey

A Superior Court judge in Passaic County has been barred from the bench after a panel said she aided a friend in a child custody dispute and lied to authorities to cover her tracks.

The state Supreme Court's order, issued Wednesday, came three months after a three-judge panel found that Judge Liliana DeAvila-Silebi's behavior violated the state's Code of Judicial Conduct and recommended her removal from office.

Silebi was the presiding judge for criminal cases in Bergen County from 2010 to 2015, before her transfer to Passaic County, where she handled civil cases.

A hearing on her removal was scheduled before the Supreme Court in early September, but she declined to offer a defense, according to the court's order.

The court found evidence proving beyond a reasonable doubt that Silebi misused her position to "advance the private interests of a litigant," made "false statements under oath" and "altered telephone records" to perpetuate false statements, according to the order.

Silebi and her attorney did not immediately return calls for comment Thursday.

Investigators found that Silebi had once enjoyed an "exemplary personal and professional reputation" as a longtime judge, according to court documents. This changed in 2015, when she used her status to help Vivianne Chermont, a former judicial intern, win custody of her child for Mother's Day weekend in 2015.

**Jenny Tran:** Embattled judge contributed to mistrial in Elmwood Park murder case

**Previously:** Passaic County judge faces misconduct charges for wading into custody case

On May 9, 2015, Silebi made a phone call to Fort Lee police, informing them that Chermont had a court order to have her 5-year-old son on Mother's Day weekend, but the father took custody instead.

A state investigation later revealed that the order never existed, and that Silebi fabricated the story to police so Chermont could retain

custody.

When confronted with the inquiry, Silebi defended her story and denied knowing Chermont.

State investigators, however, discovered that the two had become acquainted while Chermont worked as an intern in the judge's office. They kept in regular contact through dozens of phone calls and text messages in the months before Silebi's call to the Fort Lee police. The two shared a phone call on May 8, 2015, one day before the Fort Lee call. The next morning, cell phone records showed that the judge made four calls to Chermont.

Silebi initially refused to release her phone records to investigators. Then, she provided records that were heavily redacted to hide her calls with Chermont. She later was forced to cooperate under a state Attorney General's Office subpoena.

Silebi was nominated to the court in 2008 by Gov. Jon Corzine, a Democrat, and nominated for tenure by Gov. Chris Christie. Silebi, of Waldwick, requested a transfer out of Superior Court in Hackensack because of an unspecified dispute with the former county prosecutor, John L. Molinelli.